Kevin B. McDermott, Esq.  (CB#109182)
17452 Irvine Blvd #200
Tustin, CA 92680
Telephone:  (714) 731-5297
Fax:  (714) 731-5649 warlawyer@aol.com

Douglas L. Applegate, Esq. (CB# 109155)
dlapplegate@earthlink.com
Joseph M. Preis, Esq. (CB#212998)
preisj@pepperlaw.com

Attorneys for Defendant Jose Luis Nazario, Jr.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE LUIS NAZARIO, JR.,<br><br>Defendant. | Case No.  ED CR 07-127 SGL<br><br>**NOTICE OF MOTION AND MOTION FOR DISCOVERY; ATTACHMENTS** [Federal Rules of Criminal Procedure, Rule 16]<br><br>Judge Stephen G. Larson<br>Date:  12/17/2007<br>Time: 2:00 p.m.<br>Dept.: 1<br>Action Filed:  August 6, 2007 |

TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO THE UNITED

STATES OF AMERICA AND ITS COUNSEL:

PLEASE TAKE NOTICE that on December 17, 2007 at 2:00 p.m. in the courtroom

of the Honorable Stephen G. Larson the defendant Jose Luis Nazario, Jr.

("Defendant") will and does move for an order that the government make available

to the defendant and his counsel for inspection and copying each of the following

items that are in possession of the Government, including the United States Marine

Corps, the United States Navy, Naval Criminal Investigation Service, and the

-1-

Department of Defense, or which can be obtained by the government in the exercise of due diligence.

Specifically, the prosecution is required to search for and produce the following categories of discoverable materials held by the government, to include the Department of Defense:

1.     All written or recorded statements of defendant Jose Nazario, and any co-defendants, made to any person at any time and place, and the substance of any oral statements, if not embodied in a writing. If any statements are recorded, a transcript and audible copy of each recording is requested.  See U.S. v. Bailleaux (9th Cir. 1982) 685 F.2d 1105, 1113-14. This request includes, but is not limited to, statements allegedly made to or within the knowledge any unindicted co-conspirators, all informers, cooperating private individuals, cooperating witnesses or similar, and/or any foreign, local, state and/or federal law enforcement agents or persons working with them, or at their direction.

2.     All agents' (foreign, local, state and/or federal) rough notes of (a) interview with (1) Jose Nazario, (2) any co-defendant; and (b) all statements referred to in Request No. 1 above.  See U.S. v. Harris (9th Cir. 1976) 543 F.2d 1247, 1250-53.

3.     All evidence, including any statements by any person, tending to exculpate Jose Nazario,  in whole or in part.  U.S. v. Srulowitz (2d Cir. 1988) 785 F.2d 382, 387-88.

4.     Any evidence that someone other than Jose Nazario committed the crime charged.  Bowen v. Maynard, (10th Cir.) 799 F.2d 593, cert. denied, 107 S. Ct. 458 (1986); Jones v. Jago (6th Cir. 1978) 575 F.2d 1164, 1168.  This request includes, but is not limited to, all "offense reports and any other written statements dealing with this case." Id.; Sellers v. Estelle (5th Cir. 1981) 651 F.2d 1074, 1077.

5.     The name of any witnesses who made an arguably favorable statement concerning Jose Nazario, or who did not identify him as a participant in any of the

-2-

events charged or who was unsure of his identity or participation in the crimes charges, and all documents that refer or reflect such information.  <u>Jackson v. Wainwright</u> (5th Cir. 1968) 390 F.2d 288; <u>Chavis v. North Carolina</u> (4th Cir. 1980) 637 F.2d 213, 223; <u>Jones v. Jago</u> 1168 (6th Cir. 1978) 575 F.2d 1164.

6.    All statements, documents, evidence, or materials of any type which relate to (a) the joinder and/or severance of defendants in this case (Fed. R. Crim. P., Rules 8 and 14); and (b) all statements or alleged confessions made by any defendant which the prosecution may attempt to introduce at trial.

7.    The names, serial numbers, employment and present assignment of all law enforcement and other governmental personnel involved in the investigation and any arrests in this case, and all reports prepared by them or based on information provided by them.

8.    Disclosure of all searches of persons or places that occurred during any phase of this case, and all evidence seized as a result of any search, either warrantless or with a warrant, in this case.  Fed. R. P. 16(a)(1)(C); <u>U.S. v. Bryan</u>, 868 F.2d 1032. This includes without limitation, those searches referenced in the Complaint in this matter.

9.    All records, documents or other materials regarding all (a) telephone line, (b) facsimile line, (c) beeper, transponder, buzzer or motion indicator, and/or (d) pen register, information obtained in the course of, or pertaining to, the investigation of this case or the conduct alleged in the Complaint.  This request includes specifically, but is not limited to, all tapes, documents and other materials relating to the surreptitious telephonic recordings alleged in the Complaint.

10.    All (a) scientific analyses or tests conducted in the case, including but not limited to preliminary field tests. This request includes, but is not limited to, chemical, forensic, fingerprint, and handwriting analyses, as well as all underlying data pertaining to all tests or analyses; and (b) all reports, lab notes, charts, blotters,

x-rays or radiographs (or similar items), and similar materials regarding analyses or tests relating to this matter, including:

      (a)     All autopsies obtained in the course of the investigation of this case, in order for the defense to conduct independent analyses on such autopsy; and

      (b)     All testing devises, machines and/or other implements used by any governmental agents (including those acting at their direction) with respect to all scientific analyses or tests pertaining to this case.

12.    The conclusions and findings of any expert witness the prosecution intends to call, whether or not such expert has prepared a written report, and all disclosures required by Rule 16 of the Federal Rules of Criminal Procedure.  U.S. v. Barrett (9th Cir. 1983) 703 F.2d 1076.

13.    The name, last known address, and telephone number, of each prospective prosecution witness. "witnesses, particularly eyewitnesses, to a crime are the property of neither the prosecutor nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them." Gregory v. United States  (D.C. Cir. 1966) 369 F.2d 185, 188.

14.    The name and last known address of every witness to the crimes charged who will not be called as a prosecution witness. U.S. v. Cadet (9th Cir. 1984) 727 F.2d 1453, 1469.

15.    All prior written, recorded or oral statements of each prospective prosecution witness relating to this case that were made to anyone, and all agents' rough draft notes of interviews with the prospective prosecution witnesses.

16.    The name, address and whereabouts of any potential prosecution witness or informer who provided information regarding the investigation of this case, or who may have information relevant and helpful to the defense.  Roviaro v. U.S. (1957) 353 U.S. 53, 50-61.

NOTICE AND MOTION FOR DISCOVERY ATTACHMENT

17.    The prior arrest and conviction records of (a) all potential prosecution witnesses, (b) Jose Nazario (if any), and (c) any co-defendants (if any), including their complete criminal history, and the docket number and jurisdiction of all prior and pending cases.  See U.S. v. Strifler (9th Cir. 1988) 851 F.2d 1197.

18.    All evidence that any prospective prosecution witness, including but not limited to governmental agents, (a) has ever made any false statement to the authorities, whether or not under oath or penalty of perjury, and/or (b) does not have a good reputation in the community for honesty.  See U.S. v. Strifler (9th Cir. 1988) 851 F.2d 1197; Rule 608 (a), Federal Rules of Evidence.

19.    All evidence that any prospective prosecution witness, including, but not limited to governmental agents, has ever made a false, contradictory, or inconsistent statement with regard to this case, or any statement showing bias or a motive to fabricate.  Pennsylvania v. Ritchie (1987) 107 S. Ct. 989.

20.    All evidence that the testimony of any prospective prosecution witness, including but not limited to governmental agents, is inconsistent with or contradicted by that of any other person or prospective witness.  Kyles v. Whitley (1995) 514 U.S. 419; U.S. v. Hanna (9th Cir. 1995) 55 F.3d 1456.

21.    Any express or implicit promise, understanding, offer of immunity or of past, present, or future compensation, or any other kind of agreement or understanding between any prospective prosecution witness and law enforcement or prosecutorial agent or agency (federal, state and local). This request includes any explicit or implicit understanding relating to criminal, civil, income tax liability, and/or immigration or other administrative proceedings.  U.S. v. Shaffer (9th Cir. 1986) 789 F.2d 682.

22.    All evidence of discussions about, or advice concerning, any contemplated prosecution of any prospective prosecution witness, or any possible plea bargain, even if no bargain was made or the advice not followed.  Brown v. Dugger (11th Cir. 1987) 831 F.2d 1547, 1555.

NOTICE AND MOTION FOR DISCOVERY ATTACHMENT

23.    With respect to all informers involved in any way in the investigation of matters and persons relating to this case:

(a)    Monetary payments and/or other benefits which have been provided to the informer(s) by any governmental agency, including, but not limited to any and all: (1) promises or other inducements made by any governmental agent or agency regarding non-prosecution of the informer for any offense, including any release after arrest without prosecution; (2) assistance provided to the informer regarding disposition and/or sentencing in any pending or past criminal case against the informer; and (3) promises (implicit or explicit) made, or to be made, by any governmental agent or agency regarding an adjustment in the informer's immigration status in this country, including, but not limited to work permits and the like, and any promises that the informer's cooperation will be made known to he INS (to aid the informer in avoiding deportation, or for any other purpose);

(b)    Prior convictions and arrests of each informer (an original print-out of all "rap-sheets" is requested);

(c)    Occasions in which each informer has made false statements to any person, including, but not limited to (1) false statements to law enforcement officers or any governmental agent or agency (including, but not limited to, information regarding name, social security number, and/or other identifying information); and (2) false identification documentation possessed and/or used by the informer (including, but not limited to, employment or other applications on which a false social security number was listed);

(d)    Aliases or fictitious names used by the informer within the last ten years (with the exception of identities specifically provided by the

-6-

government under the Federal Witness Program), the purpose for using each name, and copies of every document or identification card in which a false identity was used. Each false name should be identified by (1) the real name of the individual using the alias; and (2) the date, time and place of its use;

(e)    Information relating to the membership of any informer or other potential prosecution witness in any organized crime enterprise, gang, or any other group which conducts illicit activities; and

(f)    Other information which adversely reflects on the credibility of any informer, or which bears on the motive of the informer to implicate any suspect.

24.    The identity of any (a) informer, (b) potential prosecution witness, or (c) other person, who was given polygraph examination during the investigation of this case or the conduct giving rise to the charges in this case and complete information regarding each polygraph examination, the identity of all persons present, the questioned asked, and the results of such examination.  See Jacobs v. Singletary  (11th Cir. 1992) 952 F.2d 1282, 1287-89.

25.    For in camera review by the district court, any and all personnel files of all law enforcement witnesses who the prosecution intends to call at trial.  U.S. v. Henthorn (9th Cir. 1991) 931 F.2d 29; U.S. v. Brumel-Alvarez (9th Cir. 1993) 991 F.2d 1452, 1461; U.S. v. Cadet (9th Cir. 1984) 727 F.2d 1453

26.    The Grand Jury transcripts of all testifying prosecution witnesses.

27.    The description of any prior convictions of Jose Nazario, any "prior similar act", or any other evidence covered by the Rules 609 or 404(b) of the Federal Rules of Evidence, that the prosecution may seek to introduce at trial and the theory of its admissibility.

28.    Copies of all documents or other exhibits that may be introduced at trial by the prosecution.

NOTICE AND MOTION FOR DISCOVERY ATTACHMENT

29.     Any photographs, photographic arrays, or video surveillance (a) pertaining to the investigation of this case; and/or (b) utilized to identify Jose Nazario, and/or any co-defendants.

30.     All identification statements/cards completed by any and all witnesses.

31.     All reports, memoranda, documents, photos, videos and other materials regarding surveillance activities pertaining to the investigation of the matter. This request includes, but is not limited to: the identity of all persons claimed by the prosecution: (a) to have been present during; (b) to have conducted surveillance of; and/or (c) to possess material information regarding, any of the acts or transactions giving rise to the offenses charged in the Complaint. This request includes any surveillance of Jose Nazario, each co-defendant, and/or any other persons material to the conduct charged in this case (See Request No.1, above). This request includes, but is not limited to, identification of the object of the surveillance reports that would tend to confirm or refute statements made by any potential prosecution witnesses regarding their observations of events relevant to this case.

32.     All information which the prosecution intends to use as part of any sentencing calculations or proceedings, including information regarding (a) "relevant conduct"; and (b) adjustments and departures.

33.     Any and all transcripts or summaries of tactical radio network or other communications network traffic on November 9, 2004 in and around Fallujah, Al Anbar Province, Iraq;

34.     Any and all documents, including the English translations and the original documents, if any, in any other language, that refer, reflect, or relate to any specimens, samples, or other physical evidence obtained from the person or clothing of Jose Nazario, any alleged coconspirator of Nazario (whether or not charged in the above-referenced matter), any person killed or injured on November 9, 2004 in Fallujah, Al Anbar Province, Iraq (whether or not Jose Nazario or any

-8-

other person is charged with an offense in connection with such death or injury), or any other person or obtained from the scene(s) of the alleged offense(s) or any other location, where such specimens, samples, or other physical evidence were gathered in connection with the date in question.

35.   Any and all documents that refer, reflect, or relate to any autopsies or medical examinations performed on the bodies of any person killed or injured on November 9, 2004 in Fallujah, Al Anbar Province, Iraq (whether or not the Nazario or any other person is charged with an offense in connection with such death or injury), that provide the basis for the underlying indictment.

36.   Any and all documents or information which relate to or reflect any efforts or attempts, whether successful or not, to obtain physical evidence of any kind from the scene(s) of the alleged offense(s), Jose Nazario, any alleged coconspirator of Jose Nazario (whether or not charged in the above-referenced matter), any person killed or injured on November 9, 2004 in Fallujah, Al Anbar Province, Iraq (whether or not Jose Nazario or any other person is charged with an offense in connection with such death or injury), family or survivors of any such person, or any other person or location in connection with the Fallujah matter, and the results of any scientific, medical, or technical analysis of any such physical evidence that provide the basis for the underlying indictment.

37.   Any and all documents or information reflecting or relating to any background investigation conducted by military or United States criminal investigators, or requested by such investigators, regarding the record or character of any person killed or injured on November 9, 2004 in Fallujah, Al Anbar Province, Iraq (whether or not Jose Nazario or any other person is charged with an offense in connection with such death or injury), family or survivors of any such person, or any other person in connection with the investigation(s) of or relating to the deaths of individuals on November 9, 2004 in Fallujah, Al Anbar Province, Iraq that provide the basis for the underlying indictment.

-9-

38.     The medical history and records of each government witness who served in Fallujah November 2004.

39.     All video footage from any Scan Eagle, Predator or other airborne recording vehicle that describes or depicts the events of November 8-11, 2004 in Fallujah, Anbar Province, Iraq.


Dated:        November 26, 2007

                                        By:  /S Douglas L. Applegate
                                            Kevin B. McDermott
                                            Douglas L. Applegate
                                            Joseph M. Preis
                                            Attorneys for Defendant,
                                            JOSE LUIS NAZARIO, JR.

-10-

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTORY STATEMENT

Defendant Jose Luis Nazario ("Nazario") is charged with offenses arising out of events that allegedly occurred in the heat of combat over three years ago while he was on active duty with the United States Marine Corp in the city of Fallujah, Al Anbar Province, Iraq.  Nazario was an employee of the Department of Defense at the time of the alleged offenses.  The Department of Defense participated in the investigation of the matter.  Nazario is being prosecuted under the Military Extraterritorial Jurisdiction Act ("MEJA"), which is administered by the Secretary of Defense.

As part of discovery, Nazario requested that the prosecution make a specific inquiry of each and every governmental agent/agency connected to the case, including the Department of Defense, for discoverable materials pursuant to Rule 16 of the Federal Rules of Criminal Procedure, Brady, Giglio, and the Jencks Act.  In response, the prosecution stated that it was required to produce discoverable materials in the possession of the United States Attorney's Office and the Naval Criminal Investigative Services, but did not believe it was required to search for and produce discoverable materials in the possession of Department of Defense components.

The issue raised is whether the prosecution's broad duty to become aware of and produce discoverable materials includes materials held by the Department of Defense.  Pursuant to both statutory and common law, a prosecutor must produce a wide range of discoverable information, including exculpatory materials, any oral or written statements by a defendant, and any statements of testifying witnesses.

The prosecution's duty to produce discoverable materials is not limited to only those materials within the prosecutor's physical possession.  Indeed, the prosecution is deemed to have constructive possession of any discoverable

-11-

materials held by any closely connected government agencies, including any agency that participated in the investigation of the defendant.   Moreover, the prosecution must also disclose any information that may be relevant to the defense, regardless of whether that agency has participated in the investigation.   Finally, for discovery purposes, the agency administering the statute under which the defendant is being prosecuted is coextensive with the prosecution.

The Department of Defense undoubtedly holds information material to the defense in this case – it employed Nazario, armed him and placed him in harm's way at the time of the alleged offenses, it participated in the investigation, and it is the administering agency of MEJA (under which Nazario is being prosecuted). Thus, the prosecutor is required to search for and produce discoverable materials held by the Department of Defense, which are reasonably accessible to the prosecution.   Nazario's motion for discoverable materials held by the Department of Defense should be granted accordingly.

## II.

## STATEMENT OF FACTS

**A.    The Charges Against Nazario Relate To Events That Allegedly Occurred While He Was An Employee Of The United States Department Of Defense.**

The government filed a criminal complaint ("Complaint") against Nazario on August 6, 2007, which alleged voluntary manslaughter in connection with events that occurred while Nazario was serving as an infantryman with the United States Marine Corp ("USMC") during the battle of Fallujah, Al Anbar, Iraq.   At the time of the charged offenses, Nazario was an enlisted member of the USMC – Squad Leader of 3rd squad, 3rd Platoon, K Company, 3rd Battalion, 1st Marine Regiment, 1st Marine Division.

Relying on the affidavit of Special Agent Mark O. Fox of the Naval Criminal Investigative Service ("NCIS"), the government alleges that "while in the heat of

-12-

1    passion caused by adequate provocation," Nazario killed two men during combat

2    operations in the city of Fallujah, Al Anbar Province, Iraq on November 9, 2004.

3    The Complaint further alleged jurisdiction under MEJA (Title 18, United States

4    Code, Sections 3238 and 3261(a)(2)).  The Complaint relies primarily on series of

5    statements from other USMC members who were on active duty on November 9,

6    2004 and were purportedly present and witnessed the alleged offenses.

7    **B.    The Prosecution Unreasonably Denies Nazario's Request That It Make**

8    **A Specific Inquiry Of Other Agencies, Including The Department Of**

9    **Defense, For Discoverable Materials.**

10   Because the government's case entails alleged conduct by Nazario while he

11   was a member of the USMC and employee of the Department of Defense, the

12   definition of government for discovery purposes includes not only the prosecution

13   but other closely related agencies, including the Department of Defense.

14   Accordingly, Nazario requested that the prosecution "make a specific inquiry of

15   each and every governmental entity connected to the case (whether such persons

16   are foreign, local, state, or federal agents, or designated as more than one of these)

17   for all the materials requested."  U.S. v. Bailleaux (9th Cir. 1982) 685 F.2d 1105,

18   1113; U.S. v. Butler (9th Cir. 1978) 567 F.2d 885, 889.

19   In response, the Government denied Nazario's request with respect to

20   Department of Defense materials.  The Government stated that it believed it was

21   "required to produce discoverable material in the possession of the United States

22   Attorney's Office and the NCIS . . . [but did] not believe that it [was] required to

23   search for and produce material in the possession of other Department of Defense

24   components."

25                                    **III.**

26   **THE EXPANDING SCOPE OF DISCOVERY IN CRIMINAL CASES**

27   Courts long have recognized a growing trend and need toward enlarging the

28   availability of pretrial discovery to criminal defendants.  The Supreme Court in

-13-

NOTICE AND MOTION FOR DISCOVERY ATTACHMENT

<u>Dennis v. U.S.</u> (1966) 384 U.S. 855, 870-71 stated:

> [There is a] growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice . . .  It is also reflected in the expanding body of materials, judicial and otherwise, favoring disclosure in criminal cases analogous to civil practice . . . In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant facts.  Exceptions to this are justifiable only to the clearest and most compelling considerations.

In 1974, the Supreme Court proposed revisions to Federal Rule of Criminal Procedure, Rule 16 ("Rule 16") to broaden further the reach of discoverable materials.  In so doing, the Supreme Court Advisory Committee recognized that "[b]road discovery contributes to fair efficient administration of criminal justice . . ."  62 F.R.D. 271, 307-08.  The Advisory Committee further noted that Rule 16 is intended to "prescribe the minimum amount of discovery to which the parties are entitled [and] not intended to limit the judge's discretion to order broader discovery in appropriate cases."  62 F.R.D. at 308.  Under Rule 16, the Court has inherent authority to order the government to disclose discoverable materials.   <u>U.S. v. Narcisco</u> (E.D. Mich. 1977) 446 F.Supp. 252, 264-65; <u>U.S. v. Germain</u> (S.D. Ohio 1975) 411 F.Supp. 710, 725.

**IV.**

**THE PROSECUTION MUST SEARCH FOR AND PRODUCE ANY RELEVANT AND DISCOVERABLE MATERIALS HELD BY THE DEPARTMENT OF DEFENSE.**

**A.    The Prosecution Has A Duty To Become Aware Of And Produce Discoverable Materials.**

Pursuant to both statutory and case law, the prosecution must produce an extensive range of discoverable materials, including all exculpatory materials (<u>Brady v. Maryland</u> (1963) 373, U.S. 83), any relevant oral, written, or recorded statements made by the defendant in the possession of the Government or may

-14-

become known by the exercise of due diligence (Federal Rule of Criminal Procedure, Rule 16[1]), and all statements made by government witnesses (Jencks Act at Title 18, U.S.C., section 3500, et. seq.]).  Moreover, individual prosecutors have a personal duty "to become aware of, and disclose, material exculpatory information."  U.S. v. Alvarez (9th Cir. 1996) 86 F.3d 901, 904; see also Kyles v. Whitley (1995) 514 U.S. 419 [the prosecution has a duty to learn of any favorable evidence known to those acting on the government's behalf in the case, including any investigative and/or law enforcement agencies].

Accordingly, the duty to produce discoverable materials extends beyond materials that are in the physical possession of the prosecutor's office.  See U.S. v. Bailleaux, 685 F.2d at 1113-14 [it is enough for the custody requirement that the evidence was in the possession of the FBI]; see also U.S. v. Robertson (E.D. Cal. 1986), 634 F.Supp. 1020, 1025, aff'd, 815 F.2d 714 (9th Cir.), cert. denied, 484 U.S. 912 (1987) ["limiting 'government' to the prosecution alone unfairly allows the prosecution access to documents without making them available to the defense].  A prosecutor also must disclose discoverable materials known to other agents of the federal government.  See Giglio v. U.S. (1972) 405 U.S. 150, 154.  Similarly, a prosecutor may not withhold discoverable evidence on the grounds that the

---

[1] Under Rule 16, the Government is required to disclose, inter alia, the following:

1.  Defendant's Oral Statements.  Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant in response to interrogation by a person the defendant knew was a government agent, if the government intends to use the statements at trial.

2.  Defendant's Written Or Recorded Statement.  Upon a defendant's request, the government must disclose and made available for copying any relevant written or recorded statement by the defendant (i) is it is within the government's possession, custody, or control, and the attorney for the government know – or through diligence could know – that the statement exists; (ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and (ii) the defendant's recorded testimony before a grant jury relating to the charged offense.

3.  Documents And Objects.  Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or potions of any of these items if the item is within the government's possession, custody, or control and:  (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

-15-

1  prosecution lacks control over the files and procedures of other executive branch

2  agencies.  U.S v. Jennings (1992) 960 F.2d 1488, 1490 citations omitted].

3  **B.    The Government Is Deemed To Have Constructive Possession Of**

4  **Materials Held By Federal Agencies That Participated In The**

5  **Investigation Of The Defendant.**

6       The touchstone of the discoverability analysis is **agency** and not physical

7  possession.  See U.S. v. Bryan (9th Cir. 1989) 868 F.2d 1032 [government

8  possession includes both the prosecutor and closely connected government

9  agencies].  The prosecution must make specific inquiries for relevant materials

10  from each governmental agency that is connected to the case in a investigative,

11  administrative, or other relevant capacity.

12       In the Ninth Circuit, a prosecutor is "deemed to have knowledge of and

13  access to anything in the possession, custody or control of **any federal agency**

14  participating in the same investigation of the defendant."  U.S. v. Bryan, 868 F.2d

15  at 1036; see also U.S. v. Wood (9th Cir. 1995) 57 F.3d 733, 737.  Ninth Circuit

16  Courts have held repeatedly, for purposes of Brady and Rule 16 disclosures, that

17  the government includes the prosecution as well as any closely connected

18  investigative agencies.  See, e.g., U.S. v. Bryan, 868 F.2d at 1036, 1036

19  [interpreting government under Rule 16 to include materials in the possession of the

20  IRS pursuant to a nationwide investigation of the defendant's activities]; see also

21  U.S. v. Bailleaux, 685 F.2d at 1113 [material evidence in possession of the FBI was

22  sufficient for purposes of the custody requirement].  Put another way, federal

23  prosecutors have constructive possession and control over any relevant materials

24  held by other federal agencies investigating the matter so long as they have

25  "knowledge" and "access" to that material.  U.S. v. Santiago (9th Cir. 1995) 47

26  F.3d 885, 893, cert. denied, 515 U.S. 1162 (1995).

27  **C.    Regardless Of Whether The Agency Participated In The Investigation,**

28  **The Prosecution Also Must Produce Any Evidence Material To The**

-16-

1  Defense.

2      The prosecution must produce any relevant discoverable information material

3  to the defense, even if it is held by another agency that did not participate in the

4  investigation of the case.  If the prosecution is uncertain about whether information

5  is material, it may submit the information to the trial court for in camera review and

6  evaluation.  U.S. v. Henthorn (9th Cir. 1990) 931 F.2d 29, 30-31.

7      For example, in United States v. Santiago, the defendant requested prisoner

8  files from the Bureau of Prison on inmates testifying on behalf of the government.

9  46 F.3d 885, 894.  The district court denied defendant's request on the grounds that

10  the Bureau of Prisons was a separate government entity and was not investigating

11  the matter.  Id.  The Ninth Circuit reversed, holding that the agency involvement in

12  the case need not be investigative in nature.  Id.  So long as the United States

13  Attorney's office had knowledge of and was able to obtain materials relevant to the

14  defense, the prosecution had a duty and obligation to disclose the files.  Id.

15  **D.  The Agency Charged With Administering Any Applicable Statutes**

16  **Under Which The Defendant Is Charged Is Considered Part Of The**

17  **Prosecution.**

18      Under Brady, the agency administrating the applicable statute under which a

19  defendant is being prosecuted is considered part of the prosecution in determining

20  the scope of discoverable information.  U.S. v. Wood (9th Cir. 1995) 57 F.3d 733,

21  737.  "The government cannot in the form of the prosecutor tell the court that there

22  is nothing more to disclose while the agency interested in the prosecution holds in

23  its files information favorable to the defendant."  Id.

24      Here, the government alleges jurisdiction over Nazario under MEJA.

25  Codified at Title 18, United States Code, section 3261, et. seq., MEJA creates

26  federal jurisdiction over individuals who commit felonies while employed by the

27  Armed Forces outside the United States.  U.S. v. Arnt (9th Cir. 2007) 474 F.3d

28  1159, 1161 [citing 18 U.S.C.S. § 3261(a)(1)].  MEJA defines "employed by the

-17-

Armed Forces" to include an employee of the Department of Defense or any other Federal agency, or provisional authority, that is supporting the mission of the Department of Defense overseas. 18 U.S.C. § 3267(1)(A)(i)(I) and § 3267(1)(A)(i)(II).

The Secretary of Defense is responsible for administering MEJA. See 18 U.S.C. §§ 3262, 3266. Specifically, the Secretary of Defense "may designate and authorize any person serving in a law enforcement position in the Department of Defense to arrest," with probable cause, any individual who has committed a felony while accompanying the Armed Forces outside of the US. 18 U.S.C. § 3262(a). Furthermore, MEJA authorizes the Secretary of Defense to prescribe "regulations governing the apprehension, detention, delivery, and removal of persons" under MEJA. 18 U.S.C. § 3266(a).

The prosecution has a general duty to produce numerous categories of discoverable materials. However, its duty is not limited to only materials in its physical possession. The prosecution has a specific duty to search for, inquire about, and produce discoverable information held by other closely connected agencies, including agencies that participated in the investigation of the case or any other agency that may have evidence material to the defense. Moreover, under Brady, the agency administrating any applicable statute under which a defendant is being accused is considered part of the prosecution in determining the scope of discoverable information.

For discovery purposes, the Department of Defense, as the administering agency of MEJA, is considered part of the prosecution in determining the scope of discoverable materials. The Department of Defense undoubtedly holds information and evidence material to the defense. The charges against Nazario relate to events that occurred while he was in the employee of the Department of Defense. The Department of Defense participated in the investigation of the alleged offenses. The prosecution alleges jurisdiction over Nazario under MEJA, which is

-18-

administered by the Secretary of Defense.

V.

## DEFENDANT'S STATEMENTS - RULE 16(a)(1)(A)

Disclosure of the statements of a defendant covered by Rule 16(a)(1)(A) is mandatory.  The Advisory Committee Note states that whatever ambiguity existed on this point prior to the 1974 proposals has now been resolved in the direction "of more liberal discovery."  62 F.R.D. at 308.

If the government has any doubt as to the discoverability of a particular statement, its proper course is to disclose what statements it has to the court so that the court may resolve the issue.  United States v. Fallen, 498 F.2d 172, 174 (8th Cir. 1974).

VI.

## WRITTEN OR RECORDED STATEMENTS OF DEFENDANT

With respect to the matters constituting a discoverable written or recorded "statement" of the defendant under Rule 16(a)(1)(A), a number of principles have emerged:

(1)     The contents of the statement may be either inculpatory, exculpatory, or neutral; it need not be a confession or an admission of elements of the offense.  It is sufficient for discovery that the statement is relevant to the crime charged.  United States v. Manetta, 551 F.2d 1352, 1356 (5th Cir. 1977); United States v. Flecha, 442 F.Supp. 1044, 1046 n.2 (E.D. Penn. 1977).

(2)     The statement is producible regardless of whether it is to be used by the government as part of its case-in-chief, or for possible rebuttal or impeachment.  United States v. Johnson, 525 F.2d 999 (2d Cir. 1975); United States v. Taylor, 536 F.2d 1243, 1245 (10th Cir. 1976); United States v. Caldwell, 543 F.2d 1333, 1352 n.93 (D.C. Cir. 1975).

(3)     The statement need not be made after the arrest of the defendant.  If it otherwise is within the Rule, it is discoverable, whenever made.  United States v. Isa, 413 F.2d 244 (7th Cir. 1969); United States v. Marshak, 354 F.Supp. 1005

-19-

1   (S.D. N.Y. 1973).

2         (4)     A statement written out or signed by the defendant need not be made

3   or addressed to an agent of the government or intended for the view of the

4   government; any document written out or signed by the defendant which is relevant

5   to the crime charged is discoverable.  United States v. Caldwell, supra, at 1352-53

6   (letter and notes written by defendant to third party); United States v. Ahmad, 53

7   F.R.D. 186, 190 (M.D. Penn. 1971).

8         (5)     The statement need not be written out by the defendant or be a written

9   document signed by him.  An oral statement recorded by mechanical, electrical, or

10  other means, such as stenography, is discoverable.  United States v. Walk, 533 F.2d

11  417, 418 (9th Cir. 1975); United States v. Bryant, 439 F.2d 642 (D.C. Cir. 1971).

12        (6)     The statement need not be a recital of past occurrences.  It may itself

13  constitute part of the alleged offense or be made in the course or commission of the

14  offense.  Specifically, tape recordings of a defendant's conversations with infor-

15  mants, undercover agents, or anyone else, which relate to the crime charged - as, for

16  example, a recording of a bribe attempt -are discoverable.  United States v. Isa,

17  supra, 246-48; United States v. Lewis, 511 F.2d 798, 802 n.6 (D.C. Cir. 1976);

18  United States v. Crisona, 416 F.2d 107, 114-15 (2d Cir. 1969), cert. denied, 397

19  U.S. 961; United States v. Caldwell, supra, 543 F.2d , 1352 n.94; Davis v. United

20  States, 413 F.2d 1226, 1230-31 (5th Cir. 1969); United States v. James, 495 F.2d

21  434, 435 (5th Cir. 1974), cert. denied, 419 U.S. 899; United States v. Walker, 538

22  F.2d 266, 268 (9th Cir. 1976).

23        (7)     An oral statement of a defendant, recited or summarized in an

24  investigative report or the notes of a government investigator, appears to be

25  discoverable under Rule 16(a)(1)(A) as a "written or recorded statement" without

26  regard as to whether it is verbatim or substantially verbatim or when the report or

27  notes were made.  United States v. Parker, 549 F.2d 1217 (9th Cir.) cert. den. 430

28  U.S. 971 (1977); United States v. Harris, 543 F.2d 1247 (9th Cir. 1976); United

-20-

States v. Johnson, 525 F.2d 999 (2d Cir. 1975).

## VII.

## **ORAL STATEMENTS TO PERSONS NOT GOVERNMENT AGENTS**

Defendant contends that discovery of oral statements that he may have made to persons not Government agents is authorized under Rule 16 or the inherent power of the court.  Prior to the 1975 amendment of Rule 16, there was substantial authority holding such statements were producible.  United States v. Crisona, 416 F.2d 100, 114-15 (2d Cir. 1969), cert. denied, 397 U.S. 961; United States v. Villa, supra; United States v. Ahmad, supra.  As previously indicated, the 1975 amendments to Rule 16 were intended to expand the scope of available discovery, not to contract it; there is nothing in the Advisory Committee Note evincing an intention to reject the decisions which had allowed discovery of statements in this category.  The reasons for permitting such discovery, from the standpoint of the defendant, are as compelling as in the case of his written or recorded statements, or his oral statements to known government agents.  In fact, the element of unfair surprise to a defendant may be stronger if he is confronted at trial with his statements made to persons whom he did not know to be government agents; his inability to recall the details of such statements, or even the fact of making them, is likely to be greater.  As one court has recognized, there is "fundamental fairness" involved in "granting the accused equal access to his own words, no matter how the government came by them."  It would appear that defendant is entitled to a copy of any statement that he may have made that are presently in the possession of the Government.  United States v. Feinberg, 502 F.2d 1180, 1182 (7th Cir. 1974), cert. den., 420 U.S. 926.

## VIII.

## **DEFENDANT'S PRIOR RECORD - RULE 16(a)(1)(B)**

Another item of mandatory disclosure on the request of the defendant is his prior criminal record.  Rule 16(a)(1)(B)  The Advisory Committee note indicates

-21-

that the defendant should be provided with a copy of his record prior to trial to eliminate any dispute as to the correctness of the record.  62 F.R.D. at 311. "The defendant may be uncertain of the precise nature of his prior record and it seems therefore in the interest of efficient and fair administration to make it possible to resolve prior to trial any disputes as to the correctness of the relevant criminal record of the defendant."The prior criminal record which must be disclosed is not limited to felony convictions.  The right of impeachment of a witness is not limited to felony convictions under Rule 609(a) of the Federal Rules of Evidence, and the defendant is entitled to discovery of all convictions which may be usable to impeach him.

## IX.

## DOCUMENTS AND TANGIBLE OBJECTS RULE 16(a)(1)(C)

This subdivision of the Rule grants a right of discovery to the defendant of documents and other tangible objects in three specified situations:

(a)     those which are "material to the preparation of his defense";

(b)     those which are intended for use by the government as evidence in its case-in-chief at the trial;

(c)     those which were obtained from, or belong to, the defendant.

The concept of "materiality" as used in this subdivision of the Rule is a broad one.  Under former Rule 16(b), the predecessor of this provision, it was held to extend not only to matters which were part of the prosecution's case [as to which there is now separate provision for discovery in Rule 16(a)(1)(C)] but also to matters which might support the defendant's case or rebut or impeach the evidence against him.  United States v. Fancher, 195 F.Supp. 448, 449-50 (D. Cf. 1961).  In this regard, defendant requests that the government provide him with copies of all warrants, inventories and affidavits in support thereof, so that he might know what warrants, if any, the government relied upon to seize property and what property was seized pursuant to the warrants.

-22-

There is no reason to read this provision of the Rule as limited to <u>Brady</u> material.  <u>Brady</u> imposes a due process obligation to disclose evidence favorable to the defendant -- irrespective of the provisions of the Rules -- and because of this there would be no need for this provision if it were limited to <u>Brady</u> material. <u>United States v. Narcisco</u>, <u>supra</u> 62 F.R.D. at 311.

The requirement that the government disclose the documents and tangible objects it intends to use in its case-in-chief at trial is unequivocal.  <u>United States v. Goldman</u>, 439 F.Supp. 337, 351 (S.D. N.Y. 1977); <u>United States v. Tanner</u>, 279 F.Supp. 457, 472 (N.D. Ill. 1967).  It has been held that the phrase "intended for use by the government as evidence in its case-in-chief at the trial" includes not only documents to be marked and offered by the government, but also documents to be relied on or referred to in any way by any government witness during the government's case-in-chief.  <u>United States v. Countryside Farms</u>, 428 F.Supp. 1150, 1154 (D. Utah 1977).  The requirement that the government disclose documents and other tangible objects obtained from, or belonging to, the defendant is also declaratory of practice under the Rule even prior to the 1975 amendments.

## X.

## <u>REPORTS OF EXAMINATIONS AND TESTS - RULE 16(a)(1)(D)</u>

Under the explicit language of this section of the Rules, defendant is entitled to be provided with the results of any scientific analysis of the evidence.  <u>United States v. Kelly</u>, 420 F.2d 26 (2d Cir. 1969); <u>United States v. Cook</u>, 432 F.2d 1092 (7th Cir. 1970); <u>United States v. White</u>, 450 F.2d 264 (5th Cir. 1971), <u>cert. den.</u>, 405 U.S. 1072.

## XI.

## <u>NAMES OF WITNESSES</u>

Courts which have considered the matter both before and after the 1975 amendments have concluded that there is inherent judicial power to order the disclosure of government witnesses in appropriate cases. <u>United States v. Cadet</u>,

-23-

727 F.2d 1453, 1469 (9th Cir. 1984); (no legitimate governmental interest has been suggested which would justify denying to the accused the identity of a witness to a crime whose testimony may be exculpatory); <u>United States v. Cannone</u>, 528 F.2d 296 (2d Cir. 1975).  Such discovery is, of course, commonplace in civil cases. Although witness lists in capital cases must be turned over to a defendant at least three days before trial under 18 U.S.C. Section 3432, it does not follow that the statute forbids witness lists to be supplied in other cases.  Rather, the matter is confided to the discretion of the courts.  As stated in <u>United States v. Palmisano</u>, 273 F.Supp. 750, 752 (E.D. Penn. 1967):

> "The statute, however, does not by its terms apply to non-capital cases.  Moreover, even if the maxim [<u>expressio unius exclusio alterius</u>] is applicable to the statute, it would mean only that the Government is not required to make full disclosure of the names of all its witnesses as a matter of course in non-capital cases.  Neither the language of the statute nor its legislative history reveals a purpose to deprive this Court of its traditional and important discretion to require limited disclosure of the identity of persons in non-capital cases where such disclosure is essential to give the defendant a fair opportunity to prepare his defense.  Indeed, to so read it would be to raise questions of its constitutionality under the Fifth and Sixth Amendments."

In this case, the need for a disclosure of a witness list well in advance of trial seems evident.  The defendant has no realistic way of preparing a defense to the numerous charges and acts leveled against him over the past quarter century, unless he knows in detail the witnesses whom he will have to confront, and has sufficient time to do thorough background and factual investigation.  If any case cries out for such

-24-

NOTICE AND MOTION FOR DISCOVERY ATTACHMENT

disclosure, it is this one.

## XII.

## STATEMENTS OF WITNESSES

As previously discussed, Rule 16 only sets the minimal requirements for discovery in the federal courts and does not limit the inherent powers of the Court to order discovery.  In appropriate circumstances statements of government witnesses to be called at trial and covered by the Jencks Act have been held discoverable in advance of trial.  In United States v. Narcisco, supra, the court held that F.B.I. 302 Forms containing interviews with prospective government witnesses should be produced to the defense before trial, despite the government's contention that they were producible only after the witnesses testified at trial.  The court stated that in view of the seriousness of the charges (murder and conspiracy to murder), the complexity of the case, and the large number of witnesses to be called, strict adherence to the Jencks Act timetable would greatly lengthen the case and hamper the efficient, orderly and fair conduct of the trial.  In the exercise of its inherent power to insure due process of law and a fair trial, the court overrode the Jencks Act restrictions, reasoning that strict adherence to the Act created a potential deprivation of due process and effective assistance of counsel and the Act could not override constitutional mandates.  446 F.Supp. at 270-71.  The court in Narcisco also ordered the government to turn over all F.B.I. interview forms which had never been examined by government counsel, to allow the defense to look for any materials discoverable under Brady v. Maryland, 373 U.S. 83 (1963).

Further, although the Jencks Act and federal rules may act as a limitation on the time in which access to discoverable material may be had, neither statutory provision can limit the constitutional requirement of disclosure of exculpatory material under Brady.  It is now clear that the Jencks Act was not meant as limitation on the scope of discovery to which a defendant is entitled, as expressed in Jencks v. United States, 353 U.S. 657 (1957), but rather was a reaffirmation of the

-25-

essential nature of that discovery:

> "That the Act was not intended to limit the Jencks
> decision is apparent from its legislative history.  Rather
> than limit, the Act reaffirms [Jencks] in its holding that a
> defendant on trial in a criminal prosecution is entitled to
> relevant and competent reports and statements in
> possession of the government touching the events and
> activities as to which a government witness has testified
> at trial.  Sen.Rep.No. 981, 85th Cong., 1st Sess., 3 1957)
> [U.S.Code Cong. & Admin. News, 1957, pp. 1861,
> 1862]."  Goldberg v. United States, 425 U.S. 94, 104
> (1976).

The Ninth Circuit has indicated, in the past, the desirability of "encouraging" the government to disclose Jencks Act statements prior to trial.  See United States v. Spagnuolo, 515 F.2d 818, 821 (9th Cir. 1975).  The Act, by its terms, provides for a reasonable defense continuance after the release of Jencks material to prepare for cross-examination.  In a case of this complexity, it is apparent that the length of the "reasonable" continuance, which is directly proportionate to the work to be done during that continuance, should be substantial.  Consequently, there would be an inordinate delay interrupting the course of trial if the Jencks Act were strictly followed.[2]

However, not all statements obtained during the course of the government investigation fall within the parameters of the Jencks Act.  Thus, the Act, and Rule 16(a)(2) apply by their terms only to government "witnesses".  Those statements which may exist from persons whom the government does not intend to call as witnesses are not regulated by the Act. Nevertheless, if any such statement contained

---

[2]See also the Argument, *infra*, regarding Giglio/Brady discovery.

NOTICE AND MOTION FOR DISCOVERY ATTACHMENT

materials which are contradictory to, or impeaching of, the statements to be elicited form the government witnesses, such statements are discoverable as <u>Brady</u> material. See <u>United States v. Marshak</u>, 364 F.Supp. 1005, 1007-08 (S.D.N.Y. 1973).  As to those materials, the Jencks Act time limitations do not apply, and discovery should be provided immediately.

With regard to non-Grand Jury materials, the comments of a government witness are only "statements" within the meaning of the <u>Jencks</u> Act if they were approved and acknowledged by the witness, or if they are a verbatim recital of the witness' words.  Thus, in <u>Goldberg v. United States</u>, <u>supra</u>, the Supreme Court made clear that absent such adoption or verbatim recital, the statements are not discoverable under the Jencks Act.  The Court reasoned that the government witness should not be impeached by the written or recorded documents unless it was accurate or accepted by the witness as accurate.  Thus, for example, if a government investigator questioned the witness and merely summarized the witness' testimony, without giving him an opportunity to acknowledge or correct it, the materials would not come within the <u>Jencks</u> Act and would not be discoverable under that theory.

In this case, the defendant wishes to make other use of similar reports.  The use to which they will be put in this case requires discovery under <u>Brady</u>.  The court in <u>Goldberg</u> was clearly concerned with the use of the statements as impeachment <u>per se</u>.  Thus, if under the <u>Jencks</u> Act, it is not verbatim or accepted transcription, the witness cannot be impeached by the writing of another.

Clearly, however, a witness may be impeached by the testimony of a government agent which contradicts the witness' testimony.  Such a statement from a government investigator would amount to a prior inconsistent statement which would be admissible even if the investigator had made no report.  The defense, however, would have no way of knowing of the existence of the interview, and thus the existence of the possible inconsistent or otherwise impeaching testimony from a

-27-

government investigator, absent disclosure of the agent's report.  Consequently, disclosure of those portions of reports or other documents which reveal such inconsistencies whether or not the report concerned an interview with a witness, are discoverable under Brady.  The exclusions of the Jencks Act and Rule 16 are inapplicable.

**XIII.**

**BRADY/GIGLIO v. JENCKS**

The Jencks Act, Title 18 U.S.C. §3500, controls the disclosure of witness statements.  It was a statutory response to Jencks v. United States, 353 U.S. 657 (1957), designed to protect the government from early disclosure of witness statements.

Significantly, Brady v. Maryland, 373 U.S. 83 (1963) was decided by the Supreme Court six years after the Jencks Act was adopted, and, clearly, the court was aware of the existence of that provision.

One of the issues which has bedeviled criminal discovery is the question of the timing of the release of information which falls within Brady and Giglio v. United States, 405 U.S. 150 (1972), but which relates to a witness whose statement may be the subject to disclosure under the Jencks Act.

The government customarily takes the position that the Jencks Act timing controls, and that the Brady/Giglio material need not be disclosed until the witness statements are delivered to the defense.

This position, it is submitted, is wrong, is in violation of the constitutional mandate of Brady and Giglio, and, particularly in a case such as this, deprives the defendant of his due process right to become adequately prepared for trial.  At least one district court agrees with this analysis.  United States v. Shvarts, 90 F.Supp. 2d 219 (E.D.N.Y., 2000).

In Shvarts, Judge Glasser, a well respected district court judge in the Eastern District of New York, analyzed this conflict, and properly concluded that the

-28-

1  government's standard position was wrong for several reasons.

2          Perhaps most important for the analysis is the indisputable fact Brady is
3  based upon the due process clause of the Fifth Amendment to the United States
4  Constitution.   In deciding, therefore, whether the Brady right or the Jencks
5  prohibitions apply, it must be recognized that Brady is constitutionally imposed,
6  while Jencks is only statutorily imposed.

7          Second, Brady was designed to require the government to provide the
8  defense "upon request" (not after waiting for Jencks disclosure) with exculpatory
9  material.   The purpose of that early disclosure is to allow a defendant to properly
10 investigate the leads required to be disclosed under Brady and Giglio.   That kind of
11 investigation cannot be properly done under the Jencks timetable.   For these, and
12 other reasons described by Judge Glasser, the defendant here is entitled to
13 immediate disclosure of Brady/Giglio material.

14         The court in Shvarts began its analysis by recognizing that Brady was "based
15 . . . on the demands of due process [and] was aimed at ensuring that the trial of a
16 defendant will be a fair one . . . ."   Id. at 225.   The court went on to state the
17 tautological proposition that the obligation imposed by Brady on the government
18 created a "corresponding right" to the information in the defendant.   Id. at 226.   For
19 this reason, the court concluded that there "is a specific constitutional right in the
20 defendant to request the discovery of impeachment and exculpatory evidence
21 favorable to him".   Id. at 226.

22         The court went on to acknowledge that Brady was decided six years after the
23 Jencks Act was enacted. Id. at 228.   It concluded that it was "inconceivable that a
24 statutory obligation should supersede a constitutional one".   Id., quoting from
25 United States v. Snell, 899 F.Supp. 17 (D.C. Mass. 1995).

26         The court agreed with the conclusion in Snell that:
27                "It makes no sense to indulge in a crabbed interpretation
28                of a constitutional right, like Brady, and an expansive

-29-

interpretation of a statutory one like <u>Jencks</u>." <u>Id</u>. at 228.

The court thus concluded as follows:

> "As to exculpatory or impeachment evidence, it being the view of the court that the constitutional obligations imposed upon the prosecutor by <u>Brady</u>, <u>Giglio</u> , <u>Agurs</u> [<u>United States v. Agurs</u>, 427 U.S. 97 (1976)] and <u>Bagley</u> [<u>United States v. Bagley</u>, 473 U.S. 667 (1985)] must prevail over the <u>Jencks</u> Act where the two collide, the government is hereby directed to make such evidence known to the defendants." <u>Id</u>. at 229.

As to "non-exculpatory or non-impeachment evidence", the court held that disclosure was governed by the <u>Jencks</u> Act, and need not be disclosed.  <u>Id</u>. at 228-229.

It is submitted that the analysis is <u>Shvarts</u> is the correct one, and that the <u>Brady/Giglio</u> requirements of production upon demand apply here.  Impeachment and exculpatory evidence, therefore, whether or not incorporated into witness statements, should be disclosed.

Finally, defendant Nasrallah is entitled to discovery of <u>Jencks</u> Act material prior to a motion to suppress evidence.

Rule 26.2, Federal Rules of Criminal Procedure makes <u>Jencks</u> Act disclosure mandatory at the time of the hearing on the motion to suppress evidence.   That section provides in part:

> "(a) Motion for Production.  After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney for the government . . . to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that

-30-

1         relates to the subject matter concerning which the witness

2         has testified."

3      Subsection (g), which governs the scope of the rule, indicates that the rule

4 applies "at a suppression hearing conducted under Rule 12".

5 **XIV.**

6 **ELECTRONIC SURVEILLANCE**

7      A number of decisions have upheld the right of the defense to discovery of

8 electronic surveillance by the government, so that the court may resolve any

9 suppression motions arising under the doctrine of <u>Alderman v. United States</u>, 394

10 U.S. 165, 89 S.Ct. 961 (1969).  See <u>Gelbard v. United States</u>, 408 U.S. 41 (1972);

11 18 U.S.C. §3504.

12      A defendant has standing to object to any non-consensual  surveillance of

13 any conversation to which he is a party.  <u>Alderman</u>, <u>supra</u>.  A defendant has

14 standing to suppress all evidence gathered in the course of the surveillance on

15 premises not his own but at which he was present at the time of the surveillance.

16 <u>Leeper v. United States</u>, 446 F.2d 281, 283 (10th Cir. 1971); <u>Garza-Fuentes v.</u>

17 <u>United States</u>, 400 F.2d 219 (5th Cir.), <u>cert</u>. <u>den.</u>, 394 U.S. 963 (1968); <u>United</u>

18 <u>States v. Blank</u>, 251 F.Supp. 166 (N.D. Ohio 1966).  The accused is also entitled to

19 suppress conversations on premises in which he had an interest even other than

20 proprietary.  <u>McReary v. Sigler</u>, 406 F.2d 1264 (8th Cir. 1968); <u>United States v.</u>

21 <u>Harris</u>, 388 F.2d 373 (7th Cir. 1967).  Finally, the accused has standing to object to

22 the surveillance if the surveillance was directed against him, i.e., undertaken for the

23 purpose, in whole or in part, of gathering evidence or leads against him.  <u>Garza-</u>

24 <u>Fuentes v. United States</u>, <u>supra</u>; <u>United States v. Mancusi</u>, 379 F.2d 897 (2d Cir.

25 1967); <u>United States v. Birrell</u>, 242 F.Supp. 191 (S.D. N.Y. 1965).

26      It is also well settled that any penetration by the Government of the privacy

27 of the defense attorney or his staff in relation to the preparation of the case violates

28 the defendant's Fifth Amendment right of due process and Sixth Amendment right

-31-

1   to counsel, as well as perhaps his Fourth Amendment right.  <u>Black v. United States</u>,

2   385 U.S. 26, 87 S.Ct. 190 (1966).

3        The defense has also been held entitled to any documentation supporting an

4   application for Court ordered wire tapping or tapes, memoranda, and logs obtained

5   thereby.  <u>United States v. Machi</u>, 324 F.Supp. 153, 155 (E.D. Wis. 1971).

6                                    **XV.**

7                      **THE DEFENDANT IS ENTITLED TO**

8              **NOTES PREPARED BY GOVERNMENT AGENTS**

9        It is the law in the Ninth Circuit that notes prepared by Government agents

10  must be preserved until the Court has had an opportunity to determine whether they

11  are "producible" and that the Government may not destroy said notes without prior

12  judicial approval.  <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 (9th Cir. 1986);

13  <u>United States v. Parker</u>, 549 F.2d 1217 (9th Cir.), <u>cert. den.</u>, 430 U.S. 971 (1977);

14  <u>United States v. Harris</u>, 543 F.2d 1247 (9th Cir. 1976).

15                                   **XVI.**

16          **DISCLOSURE OF INTENT TO RELY ON EVIDENCE**

17                  **OF SIMILAR ACTS OR CRIMES**

18       To sustain the charges in the Indictments, the Government will be required to

19  prove that the defendant willfully and knowingly committed the offenses alleged.

20  Knowledge and intent are often <u>primarily</u> shown by circumstantial evidence.  In this

21  regard, the Government may introduce evidence of acts or wrongs other than those

22  alleged in the Indictment to prove a defendant's motive, opportunity, preparation,

23  plan, knowledge, identity, or absence of mistake or accident under Rule 404(b) of

24  the Federal Rules of Evidence.  Although Rule 404(b) does require that 'reasonable

25  notice in advance of trial" be given when other crimes or wrongs will be shown at

26  trial.  Unless excused by the court.  The defendant anticipates that the Government

27  will attempt to rely upon evidence of other wrongs, acts, or crimes to demonstrate

28  defendant's knowledge, intent, or motive to participate in the offenses alleged in the

                                    -32-

Indictment.  Given the seriousness of the charge, defendant contends he would be denied his Fifth Amendment right to due process of law and his Sixth Amendment right to assistance of counsel if the Government is permitted to conceal the identities of the persons and the tangible evidence upon which it intends to rely to show similar acts or wrongs at the time of trial.

**XVII.**

**CONCLUSION.**

For the foregoing reasons, defendant submits that this request for discoverable materials held by the Department of Defense should be granted.

Dated:         November 26, 2007

                                        By:/S Douglas L. Applegate
                                           Kevin B. McDermott
                                           Douglas L. Applegate
                                           Joseph M. Preis
                                           Attorneys for Defendant,
                                           JOSE LUIS NAZARIO, JR.

NOTICE AND MOTION FOR DISCOVERY ATTACHMENT

# PROOF OF SERVICE

STATE OF CALIFORNIA        )
                                         ) ss.
COUNTY OF ORANGE        )

I, the undersigned, say: I am and was at all times mentioned a citizen of the United States and a resident of the County of Orange, over the age of eighteen years and not a party to the within action or proceeding; that my business address is 18301 Von Karmon Ave., Suite 210, Irvine, California 92612, that on November 21, 2007, I served the within:

## NOTICE OF MOTION AND MOTION FOR DISCOVERY; ATTACHMENTS [Federal Rules of Criminal Procedure, Rule 16]

on all parties in said action, by emailed PDF attachments pursuant to agreement with Assistant United States Attorney JERRY A. BEHNKE, as follows:

JERRY A. BEHNKE (SBN: 180462)
CHARLES J. KOVATS (SBN: 184185)
Assistant United States Attorneys
3880 Lemon Street, Suite 210
Riverside, California 92501
Telephone:  (951) 276-6211
Facsimile:  (951) 276-6202
E-mail:  Jerry.Behnke@usdoj.gov

I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  I certify under penalty of perjury under the laws of the United States and the State of California, that the foregoing is true and correct.

Executed on November 21, 2007, at Irvine, California.

**/S**
Declarant

-34-

NOTICE AND MOTION FOR DISCOVERY ATTACHMENT