THOMAS P. O'BRIEN
United States Attorney
SHERI PYM
Assistant United States Attorney
Chief, Riverside Branch Office
JERRY A. BEHNKE (SBN: 180462)
CHARLES J. KOVATS (SBN: 184185)
Assistant United States Attorneys
    3880 Lemon Street, Suite 210
    Riverside, California 92501
    Telephone:  (951) 276-6211
    Facsimile:  (951) 276-6202
    E-mail: Jerry.Behnke@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. ED CR 07-127-SGL |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) | OPPOSITION TO MOTION FOR BILL OF PARTICULARS |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| JOSE LUIS NAZARIO, JR., | ) | Hearing Date: March 3, 2008 |
|  | ) | Hearing Time: 3:00 p.m. |
| Defendant. | ) |  |

    Plaintiff, United States of America, through its counsel of record, Assistant United States Attorneys Jerry A. Behnke and Charles J. Kovats, hereby opposes defendant's motion for a bill of particulars.  This opposition is based on the attached points and authorities, the files and records in this case, and any

///

///

///

1  additional evidence or argument that may be presented at the
2  hearing on the motion.
3  DATED: February 15, 2008        Respectfully submitted,

                                   THOMAS P. O'BRIEN
                                   United States Attorney

                                   SHERI PYM
                                   Assistant United States Attorney
                                   Chief, Riverside Branch Office

                                        /s/
                                   _____
                                   JERRY A. BEHNKE
                                   CHARLES J. KOVATS
                                   Assistant United States Attorneys

                                   Attorneys for Plaintiff
                                   United States of America

**POINTS AND AUTHORITIES**

I.   INTRODUCTION

Defendant, a former United States Marine, is charged with two counts of voluntary manslaughter in the shooting deaths of detainees captured by defendant's squad on November 9, 2004 during a combat operation in the city of Fallujah, Iraq. The victims are identified in the indictment as "John Doe #1" and "John Doe #2."[1] The true identities of the victims are unknown to the government.

Defendant has filed a motion for a bill of particulars seeking further description of the specific location where the killings occurred and the identities of the victims.

The government opposes defendant's motion. The government has provided defendant with complete discovery including witness statements from the percipient witnesses and photographs of the specific house where the shootings occurred. The discovery in combination with the indictment as charged provides defendant with sufficient information to prepare a defense and to plead double jeopardy.

II.  FACTS UNDERLYING THE PRESENT INDICTMENT[2]

Defendant is charged with manslaughter in the shooting deaths of detainees who had been captured by defendant's squad in

---

[1] John Doe #1 and John Doe #2 refer to the two detainees who defendant personally shot and killed.

[2] The following facts are taken from the redacted affidavit of NCIS Special Agent Mark Fox in support of the criminal complaint in this matter.

3

1  Fallujah, Iraq, on November 9, 2004.  At the time of the offense,
2  defendant was a squad leader in the United States Marine Corps.
3  Defendant's squad was taking part in a combat operation to clear
4  the city of Fallujah of enemy insurgents.
5      On November 9, 2004, the first day of the combat operation,
6  defendant's squad was assigned to search a nearby house for enemy
7  insurgents and weapons.  According to the Marines who were
8  present at the house, when the Marines entered the house, they
9  were immediately confronted by four unarmed males.  The Marines
10 detained the four males and then conducted a search of the house.
11 The Marines found AK-47s and ammunition.
12     Some of the Marines then saw defendant place a call over his
13 radio and report the situation.  According to Marines in the
14 house, after the radio conversation, defendant told the other
15 Marines that he was asked "Are they dead yet," to which he
16 responded "negative."  Defendant then said he was told to "make
17 it happen."  Defendant told the other Marines in the house
18 something to the effect of, "You know what has to be done."
19 Defendant then grabbed one of the detained males and led him into
20 another room and shot him in the head.  According to one Marine,
21 at that point defendant said something to the effect of, "Who
22 else wants to kill these guys, because I don't want to do it all
23 myself."  Defendant then ordered other Marines to kill two of the
24 detainees and defendant shot and killed the fourth detainee
25 himself.
26
27
28                                  4

III. DISCOVERY PRODUCED

To date, the government has provided defendant 1166 pages of discovery, including witness statements, military records, casualty reports, briefing materials and photographs of the house where it is believed the shootings occurred. The government has also provided approximately 16 compact discs containing audio recordings of witness statements and photographs. The discovery includes statements by the four Marines who were in the house with defendant at the time of the shootings. The witnesses describe the events leading up to the shooting as well as the events that took place inside the house. Also, the government has provided defendant with statements taken from the residents of the house. Finally, the government has provided audio recordings and transcripts of phone calls that took place in early 2007 wherein defendant discussed the shootings at issue with another individual.

IV. ARGUMENT

A Bill of Particulars Is Unnecessary in Light of Discovery and Other Information Provided to Defendant

A bill of particulars is warranted where it is necessary to apprise defendant of the charges, to prevent unfair surprise at trial, to aid in the preparation of a defense, and to protect against possible future double jeopardy. United States v. Long, 706 F.2d 1044, 1053 (9th Cir. 1983); see also United States v. Mitchell, 744 F.2d 701, 705 (9th Cir. 1984) (explaining purpose of bill of particulars is to avoid unfair surprise at trial and

to allow defendant to prepare defense). In deciding whether to grant a request for a bill of particulars, the trial court must consider whether defendant has been apprised of the charges through the indictment and any other disclosures. Long, 706 F.2d at 1053. Full discovery obviates any need for a bill of particulars. Id; see also United States v. Wilson, 493 F. Supp. 2d 364, 370 (E.D.N.Y. 2006) (bill of particulars not warranted where government has made sufficient disclosure by means other than indictment).

Here, the indictment sufficiently apprises defendant of the charges. Additionally, defendant has received full discovery. The indictment, complaint affidavit, and discovery taken together clearly and specifically inform defendant of the location and time of the killings at issue. The identities of the victims are unknown to the government, so the government is unable to provide any more specificity on that topic than it already has through discovery. See United States v. Orena, 32 F.3d 704, (2nd. Cir. 1994) (explaining indictment should identify victims when they are known to the government); Wilson, 493 F. Supp. 2d at 373-374 (holding government must disclose identity of "John Doe" victim where identity is known to government).

Because defendant has been informed of the location and time of the killings, including detailed descriptions of the killings through witness statements, a bill of particulars is not warranted. Defendant faces no surprise at trial and there is no risk that he is confused about which killings are at issue.

Defendant personally executed two detainees on November 9, 2004. There is no vagueness or confusion about which killings the government believes were unlawful.