Kevin B. McDermott, Esq.  (CB#109182)
17452 Irvine Blvd #200
Tustin, CA 92680
Telephone:  (714) 731-5297
Fax:  (714) 731-5649 warlawyer@aol.com

Douglas L. Applegate, Esq.
(CB# 109155)
dlapplegate@earthlink.com
C/O Kevin B. McDermott

Joseph M. Preis, Esq. (CB#212998)
Becky Hsiao, Esq. (CB#232361)
Pepper Hamilton, LLP
4 Park Plaza, 12th Floor
Irvine, CA 92614
Telephone:  (949) 567-3500
Fax:  (949) 863-0151
preisj@pepperlaw.com
c/o Kevin B. McDermott

Attorneys for Defendant Jose Luis Nazario, Jr.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE LUIS NAZARIO, JR.,<br><br>Defendant. | Case No.  ED CR 07-127 SGL<br><br>**DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO INVOKE THE COURT'S JURISDICTION OR TO STATE AN OFFENSE** [Federal Rules of Criminal Procedure, Rule 12]<br><br>Judge Stephen G. Larson<br>Date:  4/21/2008<br>Time: 3:00 p.m.<br>Dept.: 1<br>Action Filed: 9/4/07 |

-1-

**DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS**

## Introduction

Sgt. Jose Luis Nazario, Jr. is charged with two counts of voluntary manslaughter in the deaths of two unidentified individuals, allegedly killed on November 9, 2004, in the city of Fallujah, Iraq. Sgt. Nazario was a member of the United States Marine Corps., Third Battalion, First Marine Division. The actions giving rise to the charges against Sgt. Nazario occurred during Operation Phantom Fury, an intense combat operation, including almost two weeks of house-to-house fighting designed to remove insurgents from the city of Fallujah. Sgt. Nazario was decorated for his valor in this action.

On March 27, 2008, Sgt. Nazario filed a motion to dismiss the indictment on the grounds that 1) the charges against him involve nonjusticiable political questions, and 2) the application of the Military Extraterritorial Jurisdiction Act ("MEJA"), 18 U.S.C. § 3261-67 (2000), to the facts of this case contravenes Congressional intent. On April 11, 2008, the government filed its response in opposition. As explained more fully below, the government's arguments are without merit.

## Political Question Doctrine

"Restrictions derived from the separation of powers doctrine prevent the judicial branch from deciding 'political questions,' controversies that revolve around policy choices and value determinations constitutionally committed for resolution to the legislative or executive branches." Aktepe v. United States, 105 F.3d 1400, 1402 (11th Cir. 1997) (citations omitted). Accordingly, courts have repeatedly held that "[c]laims implicating decisions made by military personnel during combat trigger the political question doctrine because those claims require courts to delve into areas unfit for judicial scrutiny." McMahon v. Presidential Airways, Inc., 460 F. Supp. 2d 1315, 1322 (M.D. Fla. 2006).

## INQUIRY INTO MILITARY AND OPERATIONAL DECISION-MAKING DURING COMBAT IS BARRED BY THE POLITICAL QUESTION DOCTRINE.

The government argues that not every action related to military combat activities is barred from judicial review. According to the government, therefore, there is no blanket prohibition against the judicial determination of anything touching upon combat operations. The government is correct that there is no general prohibition on the judicial review of all conduct that occurs during combat; however, what the government fails to recognize is the distinction between cases that merely "touch upon" combat activities and cases, like this one, that implicate military decision-making, rules of engagement, and tactical orders – areas courts have consistently found to be "judicially unmanageable." See Carmichael v. Kellogg, Brown & Root Servs., Inc., 450 F. Supp. 2d 1373, 1375 (N.D. Ga. 2006); McMahon, 460 F. Supp. 2d at 1322; Bentzlin v. Hughes Aircraft, 833 F. Supp. 1486, 1497 (C.D. Cal. 1993); Zuckerbraun v. Gen. Dynamics Corp., 755 F. Supp. 1134, 1142 (D. Conn. 1990).

In its response to the motion to dismiss, the government conveniently ignores certain inconvenient allegations from its own indictment, such as: (a) that according to N.C.I.S. Special Agent Mark O. Fox, Sgt. Nazario and his squad were under orders to "move to the center of [Fallujah], clearing the city of insurgents as they advanced." Fox Aff. at 6(a); (b) that after taking fire from a nearby house, Sgt. Nazario and his squad were ordered to search it. Id.; (c) that upon searching the house, the Marines found AK-47 rifles, ammunition, and four military-age males. Id.; The government, however, chooses to gloss over these allegations in its response because it recognizes that any inquiry into Sgt. Nazario's conduct on November 9, 2004, will necessarily implicate military decision-making and combat orders.

# *KOOHI* DOES NOT SUPPORT THE GOVERNMENT'S POSITION THAT MILITARY DECISION-MAKING DURING COMBAT IS SUBJECT TO JUDICIAL SCRUTINY.

The government also mistakenly relies on Koohi v. United States, 976 F.2d 1328 (9th Cir. 1992), to support its assertion that military decision-making and orders during combat are subject to judicial review. In Koohi, relatives of the deceased passengers and crew of Iran Air Flight 655 sought damages for negligence after a U.S. Navy warship mistakenly shot down the airliner during combat with Iranian gunboats. Id. at 1329-30. Although the Ninth Circuit dismissed the suit based on sovereign immunity, the court found that the political question doctrine did not preclude the review of the military decisions made in that case. Id. 1331-33.

In reaching this finding, however, the Ninth Circuit improperly relied on cases in which federal courts resolved issues involving *governmental operations* and *peacetime military decisions*, while it failed to discuss cases concerning military decisions made in the *midst of battle* with hostile foreign forces. Id. at 1331; see Barbara Burgess Hillson, Comment, Koohi v. United States: The Ninth Circuit Leads Federal Jurisdiction into Battle, 28 Ga. L. Rev. 269, 283-90 (1993). "In doing so, the court crossed the line between actions during peacetime and actions during combat, a move without adequate foundation since case law supports only the justiciability of actions during peacetime and those not questioning the manner in which United States forces fight." Hillson, 28 Ga. L. Rev. at 283.

In finding that Koohi was not rendered "judicially unmanageable" because the conduct occurred as part of an authorized military operation, the Ninth Circuit also improperly relied upon and mischaracterized the Supreme Court's decision in The Paquete Habana, 175 U.S. 677 (1900). Koohi, 976 F.2d at 1331. "That case involved the seizure of two Spanish fishing vessels by United States naval forces engaged in a military blockade during the Spanish-American War." Id. According

to the Ninth Circuit, the Supreme Court "found that the question whether the seizure of the vessels was militarily justified could be reviewed by the Court." Id. The Ninth Circuit, however, incorrectly stated the holding in The Paquete Habana, a case in which the Supreme Court "sought to determine, under international law, title to two fishing boats seized during war; it did not evaluate, in any way, the manner in which the boats were seized or the military's actions in obtaining them." Hillson, 28 Ga. L. Rev. at 283 (citations omitted).

In sum, Koohi does not support a proposition that claims implicating military decision-making during combat are subject to judicial scrutiny. In relying on Koohi, the government ignores a long line of cases that hold that "[c]laims arising from war that require a court to evaluate the executive's military strategy, tactical decision-making, or calculated operations are typically nonjusticiable political questions." McMahon, 460 F. Supp. 2d at 1322; see, e.g., Tiffany v. United States, 931 F.2d 271, 277 (4th Cir. 1991) ("The strategy and tactics employed on the battlefield are clearly not subject to judicial review."); Fisher v. Halliburton, Inc., 454 F. Supp. 2d 637, 641 (S.D. Tex. 2006) (recognizing that "courts have consistently held that issues involving war, and actions taken during war, are beyond judicial competence"). The government would have the court believe that this case can be tried in a vacuum; that judicial resolution of the issues involved will not implicate military decision-making, rules of engagement, tactical orders, or the military policy behind Operation Phantom Fury. As is clear from the government's indictment, however, such issues are unavoidable, and not fit for judicial scrutiny by an Article III court.

**THE POLITICAL QUESTION DOCTRINE IS NOT LIMITED TO CIVIL LITIGATION.**

The government highlights what Sgt. Nazario has already pointed out – that there appears to be no cases where courts have dismissed a criminal prosecution on the grounds that the prosecution would violate the political question doctrine.

**DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS**

Government's Resp. 4:4-11, Apr. 11, 2008. The government, unlike Sgt. Nazario, implies that the court should therefore view this lack of criminal case law as a limit on Sgt. Nazario's requested relief, *i.e.*, that the political question doctrine should not be applied in the criminal context. Such a view, however, would negate the purpose of the political question doctrine.

"The nonjusticiability of a political question is primarily a function of the separation of powers." Baker v. Carr, 369 U.S. 186, 210 (1962). "Separation of powers is a doctrine to which courts must adhere even in the absence of an explicit statutory command." Aktepe v. United States, 105 F.3d 1400, 1402 (11th Cir. 1997). The political question doctrine, therefore, acts as an inherent limit on the Judiciary's capabilities. See Bentzlin v. Hughes Aircraft Co., 833 F. Supp. 1486, 1497 (C.D. Cal. 1993). A court is not limited by the context in which such a question arises, if the suit revolves around "policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch," then case is nonjusticiable and the court should dismiss it. Japan Whaling Ass'n v. American Cetacean Soc., 478 U.S. 221, 230 (1986).

Nor is it surprising that this is a matter of first impression. Until the enactment of the Military Extraterritorial Jurisdiction Act ("MEJA"), 18 U.S.C. § 3261-67 (2001), it was impossible for federal courts to adjudicate a criminal case such as this one. MEJA opened the door for the government to bring these types of prosecutions, and Sgt. Nazario should not, as a result, be denied the use of the political question doctrine because his is the first case to involve a prosecution in federal court for the decisions and actions of a Marine during intense combat operations. The underlying premise of the civil cases Sgt. Nazario has cited to the court apply with equal force to a criminal prosecution – charges that implicate decisions made by military personnel during combat trigger the political question doctrine because those charges require civilian courts to delve into areas unfit for judicial scrutiny.

**DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS**

## THE POLITICAL QUESTION DOCTRINE SHOULD BE APPLIED TO SGT. NAZARIO'S CONDUCT.

Finally, the government argues that the political question doctrine is inapplicable here because Sgt. Nazario did not act "in conformity with the President's orders." Government's Resp. 6:12-14, Apr. 11, 2008. The government proffers that it will introduce evidence at trial of the standard operating procedures for the First Marine Division Detainee Handling and Detention Facility, as well as evidence that Sgt. Nazario and his squad received training in the days leading up to the battle of Fallujah relating to the law of war and the proper treatment of detainees. Id. at 5:9-6:12. The government, however, has put the cart before the horse.

Sgt. Nazario is not charged with a war crime. The government argues, however, that Sgt. Nazario's conduct was in contravention of his orders and training concerning the treatment and processing of detainees at the First Marine Division Detainee Handling and Detention Facility. The government thereby invites the court to inquire into Sgt. Nazario's training and orders in the days leading up to the combat operations in Fallujah in order to determine the lawfulness of his actions. Rather than rendering the political question doctrine inapplicable, such an inquiry into military training and orders is exactly what the political question doctrine counsels the court not to do. Such an inquiry will unavoidably implicate military decision-making, rules of engagement (*i.e.*, under what conditions is deadly force authorized), and tactical orders. The court, therefore, should find the political question doctrine applicable to Sgt. Nazario's actions and find that this criminal prosecution presents a nonjusticiable case that should be dismissed.

///

///

**III.      Application of MEJA in this Case Violates Congressional Intent and Leads to an Absurd Result.**

The government raises three objections to Sgt. Nazario's argument that MEJA is inapplicable to this case. All three of these objections suffer from the same fatal flaw – they all ignore the facts of *this* case. First, the government argues that any discussion of MEJA's legislative history is preempted by the plain language of the statute. This argument ignores Ninth Circuit case law, cited in Sgt. Nazario's motion, noting that courts "do not limit ourselves to the apparent plain meaning of a statute, if doing so leads to absurd or impracticable consequences." Avendano-Ramirez v. Ashcroft, 365 F.3d 913, 816 (9th Cir. 2004). Contrary to the government's argument, courts in the Ninth Circuit can and do examine legislative history, even if a statute has plain language, and MEJA is a perfect example of a plainly written statute whose application leads to impracticable consequences and must be examined in greater detail.

Second, the government points to the legislative history of the War Crimes Act, 18 U.S.C. § 2441, to argue that Congress did intend MEJA to apply to combat action.[1] The fundamental problem with this argument is that this case has absolutely nothing to do with the War Crimes Act. Sgt. Nazario is charged with offenses arising under MEJA, a law that stands on its own. MEJA is not intertwined with or related to the War Crimes Act, and as a result the legislative history of the War Crimes Act sheds no light on Congress' decision making regarding MEJA. Furthermore, the government offers no rebuttal to the legislative history of MEJA, where application of MEJA to combat action is not discussed.

---

[1] Sgt. Nazario disagrees with the government's assertion that he "concedes that application of MEJA to crimes committed by members of the Armed Forces in 'non-combat related actions' even where such conduct occurs in a 'combat zone' is appropriate." To the contrary, Sgt. Nazario's motion concedes only that MEJA was properly applied in the Arnt case, and that the application of MEJA to Green involved conduct in a combat zone. Whether MEJA is generally applicable to conduct occurring in a combat zone is unsettled.

**DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS**

Glenn Schmitt, one of MEJA's drafters, notes that the purposes of MEJA are to deter future crimes committed by civilians accompanying the military overseas, to prevent civilian's who commit crimes with military co-defendant's from escaping punishment, and to ensure due process for American citizens abroad. *See* SCHMITT, CLOSING THE GAP IN CRIMINAL JURISDICTION OVER CIVILIANS ACCOMPANYING THE ARMED FORCES ABROAD, 51 CATH. U. L. REV. 55, 77. Schmitt does not note that the prosecution of ex-servicemen for combat actions was ever considered during the creation of MEJA. Thus, while the government's discussion of the War Crimes Act is interesting, it has nothing to do with the charges against Sgt. Nazario.

Finally, the government disputes that application of MEJA leads to an absurd result and that the only absurd result would be the dismissal of this case, which would free Sgt. Nazario while his squad members face courts-martial. However, the government's argument highlights yet another absurdity of MEJA's application. Despite MEJA's goal of protecting due process, in practice MEJA decreases due process protection by applying different systems of justice to identical offenses. Despite the fact that Sgt. Nazario is charged with essentially the same conduct as Sgt. Jermaine Nelson and Corporal Ryan Weemer, Nelson and Weemer face trial in Article II courts while Sgt. Nazario is charged in an Article III court. The result is three trials, all examining the same factual events, but doing so under distinctly different procedural and evidentiary rules, and in front of entirely different jury pools. This demonstrates another absurd outcome from the application of MEJA; instead of protecting due process rights, application of MEJA allows two different judicial systems to examine the same conduct. When this judicial dichotomy is combined with the unprecedented application of MEJA to combat action and the resulting need for a jury to examine and second-guess combat action, the untenable application of MEJA to this case is revealed.

///

**DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS**

**IV.     Conclusion**

The charges against Sgt. Jose Nazario present this Court with nonjusticiable political questions and a statue that violates Congressional intent when applied to this case. Sgt. Nazario requests that the Court dismiss this indictment for the foregoing reasons.

Dated:  April 18, 2008

By:/S Douglas L. Applegate
    Kevin B. McDermott
    Douglas L. Applegate
    Joseph M. Preis
    Attorneys for Defendant,
    JOSE LUIS NAZARIO, JR.

**DEFENDANT'S <u>REPLY</u> TO THE GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS**

# PROOF OF SERVICE

STATE OF CALIFORNIA )
) ss.
COUNTY OF ORANGE )

I, the undersigned, say: I am and was at all times mentioned a citizen of the United States and a resident of the County of Orange, over the age of eighteen years and not a party to the within action or proceeding; that my business address is 18301 Von Karmon Ave., Suite 210, Irvine, California 92612, that on April 18, 2008, I served the within:

**DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO INVOKE THE COURT'S JURISDICTION OR TO STATE AN OFFENSE**
[Federal Rules of Criminal Procedure, Rule 12]

on all parties in said action, by emailed PDF attachments pursuant to agreement with Assistant United States Attorney JERRY A. BEHNKE, as follows:

JERRY A. BEHNKE (SBN: 180462)
CHARLES J. KOVATS (SBN: 184185)
Assistant United States Attorneys
3880 Lemon Street, Suite 210
Riverside, California 92501
Telephone: (951) 276-6211
Facsimile: (951) 276-6202
E-mail: Jerry.Behnke@usdoj.gov

I am employed in the office of a member of the Bar of this Court at whose direction the service was made. I certify under penalty of perjury under the laws of the United States and the State of California, that the foregoing is true and correct.
Executed on Thursday, April 18, 2008, at Irvine, California.

**/S**
Declarant

**DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS**