THOMAS P. O'BRIEN
United States Attorney
SHERI PYM
Assistant United States Attorney
Chief, Riverside Branch Office
JERRY A. BEHNKE (SBN: 180462)
CHARLES J. KOVATS (SBN: 184185)
Assistant United States Attorneys
       3880 Lemon Street, Suite 210
       Riverside, California 92501
       Telephone:  (951) 276-6211
       Facsimile:  (951) 276-6202
       E-mail: Jerry.Behnke@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA


| UNITED STATES OF AMERICA, | ) | No. ED CR 07-127-SGL |
|---|---|---|
| Plaintiff, | ) | GOVERNMENT'S MOTIONS IN LIMINE; DECLARATION OF JERRY A. BEHNKE; EXHIBITS |
| v. | ) | |
| JOSE LUIS NAZARIO, JR., | ) | Hearing Date: June 23, 2008 Hearing Time: 2:00 p.m. |
| Defendant. | ) | |

     Plaintiff, United States of America, through its counsel of record, Assistant United States Attorneys Jerry A. Behnke and Charles J. Kovats, hereby submits its motions in limine with defendant's responses attached hereto.  The government is submitting its motion filing after attempting to comply with the Court's standing order requiring a joint filing as set forth in the attached declaration of Jerry A. Behnke.  While defendant objects to the Court's standing order as set forth in the attached exhibits, defendant prepared responses to the government's issues.  The defendant's responses were received too late to incorporate them into this pleading, however, the

government has attached them to this filing as a separate
exhibit.   This motion is based on the attached memorandum of
points and authorities, declaration of Jerry A. Behnke, exhibits,
the files and records in this case, and any additional evidence
or argument that may be presented at the hearing on the motion.

DATED: June 16, 2008              Respectfully submitted,

                                  THOMAS P. O'BRIEN
                                  United States Attorney

                                  SHERI PYM
                                  Assistant United States Attorney
                                  Chief, Riverside Branch Office

                                         /s/
                                  _____
                                  JERRY A. BEHNKE
                                  CHARLES J. KOVATS
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  United States of America

2

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

I.   INTRODUCTION

3       Defendant, a former United States Marine, is presently

4  charged with two counts of voluntary manslaughter in the shooting

5  deaths of four detainees captured by defendant and his squad on

6  November 9, 2004 in the city of Fallujah, Iraq.  November 9, 2004

7  was the first day of defendant's involvement in combat operations

8  in Fallujah.  The killing of the four detainees occurred within

9  the first few hours of combat on November 9, 2004.

10      The government expects the evidence will show, in summary,

11 that after advancing several blocks through the city and

12 participating in firefights with enemy insurgents, defendant's

13 squad was ordered to search a nearby house.  When the Marines

14 entered the house, they immediately encountered four unarmed

15 males.  Defendant and other Marines stood watch over the

16 detainees, who were seated on the floor in a single row, and

17 questioned them while other Marines searched the house.  After

18 searches of the house revealed at least one firearm and

19 ammunition, defendant placed a call over his radio.  Defendant

20 then executed one of the detainees and ordered two of his

21 subordinates to execute two of the detainees.[1]  Defendant shot

22 and killed the remaining detainee.  None of the detainees were

23 armed and none of the detainees resisted defendant or his

24 subordinates in any way.

25
_____

26      [1]  These two individuals are both currently in the USMC and
   are being prosecuted by military court-martial for their roles in
27 this offense.

28                              3

II.  GOVERNMENT'S MOTION ISSUES

   A.   <u>Defendant Should Be Precluded From Introducing His Own</u>
        <u>Hearsay Statements</u>

        The government seeks to preclude defendant from introducing
his own hearsay statements.  Witnesses who were inside the house
at the time of the shootings reported that defendant placed a
radio call to some unknown person after the Marines had concluded
two searches of the house which revealed at least one AK-47
assault rifle and ammunition.  During the call, the detainees
were still seated on the floor and were being watched over by
defendant and other Marines.  The witnesses were only able to
hear portions of defendant's end of the conversation.  For
instance, James Prentice reported hearing defendant state
something to the effect that they had four military age males and
that they found weapons and had taken fire from the house.
Prentice then heard defendant state, "Negative."  After a pause,
defendant then said, "Roger.  Solid copy."  Following the radio
call, defendant then told the other persons in the house that he
had been asked, "Are they dead yet?"  Defendant said that he
replied, "Negative."  Defendant then said he was told to "make it
happen."  Defendant did not say to whom he spoke.  Following this
conversation, the detainees were executed by defendant and the
other Marines.

        Defendant cannot elicit through cross examination or
otherwise his own self-serving hearsay statements identified
above.  Such statements may only be admitted by the government as

4

1  admissions of a party opponent.  Defendant may not place his

2  exculpatory statements before the jury without subjecting himself

3  to cross-examination.  <u>United States v. Fernandez</u>, 839 F.2d 639,

4  640 (9th Cir. 1988); <u>see</u> Fed. R. Evid. 801(c); <u>United States v.</u>

5  <u>Ortega</u>, 203 F.3d 675, 682 (9th Cir. 2000).  Additionally, absent

6  evidence establishing to whom defendant spoke, defendant's

7  hearsay statements are not relevant.

8       B.   <u>Evidence Or Argument Regarding Combat Activities That</u>

9            <u>Occurred After The Charged Killings Should Be Excluded</u>

10      The government moves to preclude defendant from introducing

11 evidence of combat activities that occurred after the charged

12 killings.  The killings at issue took place within the first few

13 hours of defendant's involvement in combat operations in the city

14 of Fallujah.  Defendant participated in combat operations in

15 Fallujah for many days after this incident and was, during that

16 time, involved in many subsequent firefights and other incidents,

17 including an incident referred to by Marines as "Hell House."

18 Defendant's experiences and involvement in events that took place

19 after the killings at issue are not relevant to the present

20 charges.  Similarly, defendant should be precluded from arguing

21 or introducing evidence of the size and scope of the battle in

22 Fallujah.  The charged killings took place within the first few

23 hours of the ground assault.  The fact that the battle lasted for

24 many days after and the number of persons killed and wounded in

25 the entire conflict are irrelevant to the present charges.

26 Additionally any relevance is substantially outweighed by the

27

28                                   5

1  risk of undue prejudice and waste of time and confusion of the
2  issues.  <u>See</u> Fed. R. Evid. 401, 402, 403.

3      Facts about events in Fallujah prior to the charged killings
4  may be relevant to defendant's state of mind at the time of the
5  offense if defendant establishes he was aware of such facts and
6  defendant establishes they are relevant to some issue in the case
7  such as an affirmative defense.  The charged offense, voluntary
8  manslaughter, only requires proof of an intentional or reckless
9  act.  Unlike murder, manslaughter does not require a showing of
10 malice aforethought.  <u>See</u> <u>Stevenson v. United States</u>, 162 U.S.
11 313, 320 (1896); <u>United States v. Roston</u>, 986 F.2d 1287, 1290-
12 1291 (9th Cir. 1993).  Therefore, the relevance of defendant's
13 state of mind at the time of the offense is limited.

14      C.   <u>Any Evidence Or Argument Regarding Specific Instances</u>
15           <u>Of Conduct Of Other Insurgents Should Be Excluded</u>

16      The government seeks to preclude defendant from eliciting
17 evidence of other specific instances of conduct by insurgents
18 unrelated to the killings at issue.  Defendant, in arguing
19 pretrial motions, has mentioned various facts unrelated to the
20 present charges.  For instance, defense counsel has argued that
21 there have been occasions when insurgents would feign surrender.
22 Such specific incidents of conduct are not admissible.  While a
23 defendant may, in limited fashion, introduce evidence of a
24 victim's character to support a self-defense claim, here the
25 identity of the victims are unknown and there is, so far, no
26 evidence or claim of self defense.  Thus, the victim's character

27

28                                   6

1   cannot be put at issue.  However, even if defendant is permitted

2   to introduce character evidence pertaining to insurgents as a

3   group in support of a self defense claim, such evidence cannot

4   include specific instances of conduct.  <u>See</u> Fed. R. Evid. 405;

5   <u>United States v. Gulley</u>, ___ F.3d ___ (5th Cir. April 30, 2008)

6   (holding evidence of prior acts of violence by victim

7   inadmissible where defendant claimed self defense); <u>United States</u>

8   <u>v. Keiser</u>, 57 F.3d 847, 854-855 (9th Cir. 1995) (holding victim's

9   character not essential element of charge therefore evidence of

10  specific instances of conduct of victim inadmissible).

11          D.      <u>Portions Of The Recorded Conversation Between Jermaine</u>

12                  <u>Nelson And Defendant On January 8, 2007 Are Admissible</u>

13          In January 2007, Jermaine Nelson ("Nelson") agreed to assist

14  in the investigation of this matter by engaging in recorded

15  telephone conversations with defendant.  During one of these

16  recorded calls on January 8, 2007, defendant and Nelson discussed

17  the killings at issue in this case.  (Ex. E).  During the

18  conversation, Nelson asked defendant how he should respond if

19  asked on a polygraph whether he ever murdered somebody.  Nelson

20  then discussed the shootings at issue and asked defendant, "I

21  mean, we had the right orders, didn't we?"  Defendant responded,

22  "Yeah."  Nelson then asked, "Who gave us the orders though,

23  nigger?"  Defendant responded, "I did."  A few lines later,

24  defendant explained further, "That shit is coming from the

25  (INAUDIBLE) Commanders.  We got to get from point A to point

26  Barreto and we ain't got time to throw mutherfuckers on the truck

27

28                                  7

'cause we moving."  Then, defendant explained, "It was, you know, a decision we made because it was the outcome that's the best. So it was, it was a decision.  You can't play Monday morning quarterback, bro."  This portion of the conversation, found at pages 12-15 of the transcript, is admissible as admissions of a party opponent pursuant to Federal Rules of Evidence, Rule 801(d)(2).

Also during the same conversation, defendant explained that he enjoyed being a police officer.  Defendant explained that he would respond to different calls such as "mother fuckers fighting in their house, you coming in there and fucking separate them, and if you got to beat somebody's ass 'cause they're drunk, you beat somebody's ass."  (Ex. E at pp. 6-7).  Defendant described responding to domestic violence calls as follows: "[W]e just go in somebody's house like five, six, seven deep and beat the shit out of this motherfucker and find a reason to take him to jail." (Id. at p. 7).  Again, these statements are admissible under Rule 801(d)(2).  These statements by defendant are relevant to the issue of defendant's intent as well as the absence of mistake or other defense.  The statements demonstrate defendant's intent to do harm to and mistreat persons in his custody.  They further demonstrate defendant's willingness to abuse power and authority in regards to detained persons.  In the event that the Court determines the statements are not admissible in the government's case in chief, the government would seek to introduce the statements in rebuttal if defendant, through testimony, cross

examination, or otherwise makes these statements relevant.

If defendant testifies, the government will seek to impeach defendant with other statements from the January 8, 2007 call. Specifically, at one point during the conversation, Nelson explained to defendant that he was considering leaving the military and becoming a police officer. Nelson told defendant that he was concerned about the polygraph examination. Defendant asked Nelson, "You don't know how to lie through a polygraph?" Nelson responded, "No, nigger, all right. All right, what if we go to the polygraph test, right?" Defendant then stated, "Dog, I got to school you. I got to tell you how to pass that shit." (Ex. E at p. 10). These statements are directly relevant to defendant's character for truthfulness and would be relevant if defendant testifies or introduces character evidence thereby placing his character for truthfulness at issue.

E.   Weemer's Hearsay Statements After The Incident Should Be Admitted

The government seeks to introduce Ryan Weemer's statement to Carlisle and Prentice after the incident. Prentice told NCIS investigators that, after the defendant's radio call, Weemer and defendant each shot a detainee. Defendant then asked whether anyone else wanted to help kill the detainees and Prentice said he would. At that point, Weemer told Carlisle and Prentice to leave the house and they complied. After the shootings, Carlisle, Prentice and Weemer took Humvees back to headquarters to have the tires replaced. While waiting for the tires to be

replaced, Weemer explained to Carlisle and Prentice that he told them to leave the house earlier because he didn't want either of them to have to kill any of the detainees.   The government seeks to introduce this hearsay statement by Weemer under Rule of Evidence 803(3).

## DECLARATION OF JERRY A. BEHNKE

1.  I am an Assistant United States Attorney assigned to the matter of <u>United States v. Jose Nazario</u>, ED CR 07-127-SGL.

2.  Jury trial is presently scheduled for July 8, 2008 with a pretrial hearing and hearing on motions in limine on June 23, 2008.

3.  In an effort to comply with the Court's standing order requiring the parties to file a joint motion in limine, on May 28, 2008, I sent an e-mail to defense counsel proposing that the parties exchange motion issues the following week to allow time for the parties to draft their positions on each issue before compiling a single, joint submission to the Court.

4.  On June 3, 2008, I sent to defense counsel via e-mail a letter setting a proposed schedule for drafting a joint motion. (Ex. A).

5.  On June 5, 2008, I received an e-mail from defense counsel stating that they were unfamiliar with the Court's standing order requiring a joint submission and requesting a copy of the order.

6.  Later, on June 5, 2008, I sent to defense counsel via e-mail a copy of the Court's standing order as well as a letter setting forth the government's motion issues.  (Ex. B).

7.  On June 6, 2008, I received a letter from defense counsel stating, in part, that the defense objects to the Court's standing order "in light of the present state of the discovery." (Ex. C).  Counsel claims that they are unable to identify

potential motion issues because the government has not revealed which witnesses and exhibits the government will use at trial and has not produced grand jury transcripts to the defense. Therefore, counsel claims the standing order is "unworkable." Counsel concluded by stating that objections to the government's motion issues "will be completed prior to the next court date."

8.   This morning I received defendant's responses to the issues raised in the government's June 5, 2008 letter.  The responses were e-mailed on Saturday afternoon, June 14.  I have not had sufficient time to incorporate these responses into the attached pleading, so I have attached them as Exhibit D for the Court's consideration.

I swear under penalty of perjury the foregoing is true and correct to the best of my knowledge.


Dated:  June 16, 2008

/s/
_____
JERRY A. BEHNKE

12