

U. S. Department of Justice

**United States Attorney**
**Central District of California**

Jerry A. Behnke
Assistant United States Attorney
Deputy Chief, Riverside Branch Office

*3880 Lemon Street, Suite 210*
*Riverside, California 92501*
*(951)276-6211*

June 5, 2008

Kevin McDermott
17452 Irvine Boulevard
Suite 200
Tustin, California 92780

    Re: <u>United States v. Jose Nazario</u>, ED CR 07-127-SGL

Dear Mr. McDermott:

    The government intends to argue the issues set forth below in the joint motion in limine. By Thursday, June 12, please let me know whether you oppose the government's requests. If you do oppose the requests, please send me, via e-mail if possible, a copy of your points and authorities in opposition so that I can prepare a joint filing. I will be available on June 12, or earlier if you prefer, to discuss these matters.

    <u>Issue 1</u>: The government seeks to preclude defendant from introducing his own hearsay statements. Witnesses have reported that, while inside the house, defendant placed a radio call to some unknown person. The witnesses were only able to hear portions of defendant's end of the conversation. For instance, James Prentice reported hearing defendant state something to the effect that they had four military age males and that they found weapons and had taken fire from the house. Prentice then heard defendant state, "Negative." After a pause, defendant then said, "Roger. Solid copy." Following the radio call, defendant then told the other persons in the house that he had been asked, "Are they dead yet?" Defendant said that he replied, "Negative." Defendant then said he was told to "make it happen." Defendant did not say to whom he spoke. Defendant cannot elicit through cross examination or otherwise his own self-serving hearsay statements. Such statements may only be admitted by the government as admissions of a party opponent. Defendant may not place his exculpatory statements before the jury without subjecting himself to cross-examination. <u>United States v. Fernandez</u>, 839 F.2d 639, 640 (9th Cir. 1988); <u>see</u> Fed. R. Evid. 801(c); <u>United States v. Ortega</u>, 203 F.3d 675, 682 (9th Cir. 2000).

Issue 2: The government seeks to preclude defendant from introducing evidence of combat activities that occurred after the charged killings. The killings at issue took place within the first few hours of defendant's involvement in combat operations in the city of Fallujah. Defendant participated in combat operations in Fallujah for many days after this incident and was, during that time, involved in many firefights and other incidents, including an incident referred to by Marines as "Hell House." Defendant's experiences and involvement in events that took place after the killings at issue are not relevant to the present charges. Similarly, defendant should be precluded from arguing or introducing evidence of the size and scope of the battle in Fallujah. The charged killings took place within the first few hours of the ground assault. The fact that the battle lasted for many days after and the number of persons killed and wounded in the entire conflict are irrelevant to the present charges. Additionally any relevance is substantially outweighed by the risk of undue prejudice and waste of time and confusion of the issues. See Fed. R. Evid. 401, 402, 403.

Issue 3: The government seeks to preclude defendant from eliciting evidence of other specific instances of conduct by insurgents unrelated to the killings at issue. Defendant, in arguing pretrial motions, has mentioned various facts unrelated to the present charges. For instance, defense counsel has argued that there have been occasions when insurgents would feign surrender. Such specific incidents of conduct are not admissible. While a defendant may, in limited fashion, introduce evidence of a victim's character to support a self-defense claim, here the identity of the victims are unknown. Thus, the victim's character cannot be put at issue. However, even if defendant is permitted to introduce character evidence pertaining to insurgents as a group, such evidence cannot include specific instances of conduct. See Fed. R. Evid. 405; United States v. Gulley, __ F.3d __ (5th Cir. April 30, 2008) (holding evidence of prior acts of violence by victim inadmissible where defendant claimed self defense); United States v. Keiser, 57 F.3d 847, 854-855 (9th Cir. 1995) (holding victim's character not essential element of charge therefore evidence of specific instances of conduct of victim inadmissible).

Issue 4: The government seeks to introduce portions of a recorded conversation between defendant and Jermaine Nelson on January 8, 2007. In January 2007, Jermaine Nelson agreed to assist the NCIS investigation by engaging in recorded telephone conversations with defendant. During one of these recorded calls on January 8, 2007, defendant and Nelson discussed the killings at issue in this case. During the conversation, Nelson asked defendant how he should respond if asked on a polygraph whether he ever murdered somebody. The government seeks to introduce the portions of the conversation transcribed at pages 12-15 that relate to this discussion. This portion of the conversation is admissible as admissions of a party opponent. Also during the same conversation, defendant explained to Nelson that he enjoyed being a police officer. Defendant explained that he would respond to different calls like "mother fuckers fighting in their house, you coming in there and fucking separate them, and if you got to beat somebody's ass 'cause they're drunk, you beat somebody's ass." (Transcript p. 6-7). Defendant described responding to domestic violence calls as follows: "[W]e just go in somebody's house like five, six, seven deep and beat the shit out of this motherfucker and find a

reason to take him to jail." (Transcript p. 7). These statements by defendant are relevant to the issue of defendant's intent as well as the absence of mistake or other defense. The statements demonstrate defendant's intent to do harm to and mistreat persons in his custody. They further demonstrate defendant's willingness to abuse power and authority in regards to detained persons. In the event that the Court determines the statements are not admissible in the government's case in chief, the government would seek to introduce the statements in rebuttal if defendant, through testimony, cross examination, or otherwise makes these statements relevant.

Issue 5: If defendant testifies, the government will seek to impeach defendant with other statements from the January 8, 2007 call with Nelson. Specifically, at one point during the conversation, Nelson explained to defendant that he was considering leaving the military and becoming a police officer. Nelson told defendant that he was concerned about the polygraph examination. Defendant asked Nelson, "You don't know how to lie through a polygraph?" Nelson responded, "No, nigger, all right. All right, what if we go to the polygraph test, right?" Defendant then stated, "Dog, I got to school you. I got to tell you how to pass that shit." These statements are directly relevant to defendant's character for truthfulness and would be relevant if defendant testifies or introduces character evidence thereby placing his character for truthfulness at issue.

Issue 6: The government seeks to introduce Ryan Weemer's statement to Cory Carlisle and James Prentice after the incident. James Prentice told NCIS investigators that, after the detainees were killed, Carlisle, Prentice and Weemer took a Humvee back to headquarters to have the tires replaced. While waiting for the tires to be replaced, Weemer explained to Carlisle and Prentice that he told them to leave the house earlier because he didn't want either of them to have to kill any of the detainees. The government seeks to introduce this hearsay statement by Weemer under Rule 803(3).

Very truly yours,

THOMAS P. O'BRIEN
United States Attorney

JERRY A. BEHNKE
Assistant United States Attorney

cc: Douglas Applegate