**DEFENSE'S REPLY**

**TO GOVERNMENT'S ISSUES**

*General Position of Issues as a whole:*

It is the defense's position that such a pre-trial order compelling identification of limine issues at this point in the process unfairly handcuffs the defense. At this point, the defense has yet to receive a witness list, an exhibit list or the transcript from the grand jury. At this point, *only* the government has a clue as to expected testimony of the witnesses it intends to call. Asking the defense at this point to prepare and advance limine issues is asking for the defense to wildly speculate on the status of the evidence. Further, any limitation placed upon the defense to file limine motions when it finally learns of the government's witness and evidence list is an unfair and unreasonable restraint upon the defendant's due process rights.

Additionally, one of the biggest problems with the government's stance with respects to these "issues' is their inconsistency with prior filings. The government argues at various points in its letter that information about battle plans, tactics, insurgents etc. is prejudicial or confusing to the jury. This is exactly the point made by the defendant in the defense's motion to dismiss on political question grounds. It was argued that the complexities of this case made it inappropriate for a civilian jury to consider, while the government argued that a civilian jury was well equipped to consider combat action. The government cannot now argue that evidence about the size and scope of combat action, the actions of insurgents, the actions at "hell house" are all suddenly too confusing, prejudicial, scary, etc for the jury to consider.

*Issue-by-issue objection:*

Issue 1: The defendant is permitted under Rule 801 to elicit such statements provided that they are exceptions to hearsay. For example, statements about what was or was not said on the radio are present-sense impressions, as they describe the state of mind of the defendant and his companions at the time the events were unfolding, or immediately thereafter, according to the exception to the rule. 803(1) Moreover, depending on how far-removed from active combat this radio call was, it could qualify as an excited utterance. 803(2)

Issue 2: Evidence about the size and scope of the combat operations goes to the defendant's state of mind at the time of the alleged offense. The government argues that there will be a "confusion of the issues"; which is exactly the point made by the defendant in his motion to dismiss on political question grounds. The government argued then that the civilian jury was well equipped to consider combat action, the government

cannot now argue that hearing testimony about the size and scope of that combat action is too confusing to the jury. Moreover, any prejudice from the presentation of battle plans is outweighed by the need of the defense to educate the jurors about the situation and circumstances defendant encountered in Fallujah. Despite the government's argument, the events inside the house in Fallujah on Nov. 11th cannot be considered in a bubble - those events are illuminated, explained, and understood only after an examination of the situation in Fallujah leading up to the assault. Essentially, the size and scope of the battle are relevant to the defendant's state of mind, i.e., was he under duress, pressure, fear for his life -- which is central to our defense that he reacted to a threat. Any risk of prejudice does NOT substantially outweigh the relevance of this information. FRE 403

With regard to evidence about the duration and nature of the battle **after** the alleged incident, such evidence is relevant to explain any inconsistencies in the details of what happened ... memories are faded, blocked out by the violence that they witnessed, etc... It may be the argument of the defense that the defendant doesn't remember this specific incident, but that when confronted with this type of house-to-house combat throughout the engagement he would only kill insurgents that he perceived to be a threat to him or his men. (See the explanation below)

Issue 3: On this issue the defense asserts that the government misses the point entirely. The issue here is not character evidence of "victims" or groups but instead evidence that goes to defendant's state of mind. The government's argument focuses on the use of character evidence to prove conduct. However, the defendant may not be arguing that **these** insurgents acted in a specific manner. Instead, evidence about the actions of other insurgents, in the same city during the same time period, goes to the defendant's state of mind during the assault on Fallujah and during his interactions with insurgents during that time period. Only by admitting evidence of the irrational and unstable actions of other insurgents can the jury properly assess the threat presented to the defendant and his squad at the time. The defendant may not be implying that **these** insurgents were intending to feign surrender, etc., just that it was a possibility that was in the minds of the Marines.

Issue 4: Evidence regarding what the defendant did or did not do as a police officer is inadmissible for three reasons. First, as government notes, it is improper character evidence under Rule 405. The Government is seeking to have the jury believe that the defendant acted in a house in Fallujah in a manned consistent with his alleged actions in a house in Los Angeles three years *after* the allegations in this case. That is an improper use of character evidence. Second, such evidence is totally irrelevant to the crimes charged in this case. A domestic violence call in Los Angeles is a world away from a house-to-house firefight in Fallujah and the defendant's actions while a police officer, after leaving the army, have no bearing on his in-service conduct. Third, introduction of recorded phone calls between Nazario and Nelson, without the live testimony of Nelson, will violate the Confrontation Clause of the 6th Amendment. See *Crawford v. Washington*, 541 US 36 (2004) (attached) (holding that the confrontation clause commands that reliability be assessed by testing "in the crucible of cross-examination") The *Crawford* court explicitly overruled Ohio v. Roberts, and noted that the "right to

confront one's accusers is a concept that dates back to Roman times." *Crawford*, 541 U.S. at 43. Justice Scalia went on to cite English common law from 1696 (*King v. Paine*, 87 Eng. Rep. 584 (statement inadmissible because defendant did not have opportunity to cross examine)). Scalia concludes "the unpardonable vice of the *Roberts* test, however, is not its unpredictability, but its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude." *Id.* At 63. If Nelson is unavailable to testify, Nazario is denied his right to confront his accuser.

Issue 5: See issue 4.

Issue 6: The government again misses the point on this issue. Rule 803(3) (Then Existing Mental, Emotional, or Physical Condition) specifically states that this type of evidence is not admissible under the hearsay exception. The rule notes that the exception does "not include[e] a statement of memory or belief to prove the fact remembered or believed..." In this case, Weemer's statement is not a statement of a then-existing mental condition. First, his statement is made hours after the fact, allowing time for reflection and contemplation. Second, his alleged explanation for why he told others to leave the house is a statement of memory. It does not describe his mental state at the time, nor does it describe his emotional state at the time. Instead, it is a reflective comment offered to prove what his intent was at the time. [See generally *United States v. Emmert*, 829 F.2d 805 (9th Cir 1987), *United States v. Best*, 219 F.3d 192 (2nd Cir. 2000) and *United States v. Samaniego*, 345 F.3d 1280 (11th Cir. 2003)]

There are two additional objections to this evidence. First, as noted above, absent live testimony from Weemer such evidence is barred by the Confrontation clause. Second, in a related point, *Bruton v. Washington*, 391 US 123 (1968) holds that even a limiting instruction on the use of a co-defendant confession is not an adequate substitute for the right of cross-examination. While this is not a joint trial, and not a case where there are clear co-defendants, the holding of *Bruton* can be analogized to this case. What the government is trying to do is take Weemer's statement, in which he potentially confesses culpability in a murder, and use it against the defendant. This is not permissible - the government can use Weemer's statement against **Weemer only**, absent Weemer's live testimony. As *Bruton* notes: " Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. *Id.* At 135-6.