Kevin B. McDermott, Esq.  (CB#109182)
17452 Irvine Blvd #200
Tustin, CA 92680
Telephone: (714) 731-5297
Fax: (714) 731-5649
warlawyer@aol.com

Douglas L. Applegate, Esq. (CB# 109155)
dlapplegate@earthlink.com

Joseph M. Preis, Esq. (CB#212998)
Pepper Hamilton, LLP
4 Park Plaza, 12th Floor
Irvine, CA 92614
Telephone:  (949) 567-3500
Fax:  (949) 863-0151
preisj@pepperlaw.com

Attorneys for Defendant Jose Luis Nazario, Jr.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE LUIS NAZARIO, JR.,<br><br>Defendant. | Case No.  ED CR 07-127 SGL<br><br>**MOTION IN LIMINE RE WEEMER'S POLYGRAPH INTERVIEW**<br><br>Judge Stephen G. Larson<br>Date:  8/18/08<br>Time:  1:30 p.m.<br>Dept.: 1<br>Action Filed: 9/4/07 |

NOW COMES THE DEFENDANT, JOSE NAZARIO, and respectfully requests that this Court bar admission of any statement derived from the pre-polygraph interview of prospective witness Ryan Weemer as the statement was obtained under circumstances that bar admission under Crawford v. Washington, 541 U.S. 36 (2004).

-1-

MOTION IN LIMINE RE: WEEMER'S POLYGRAPH INTERVIEW

# I.    STATEMENT OF THE FACTS

The defense learned late last week from the trial brief of the Government that it intends to use the transcript, and presumably the recording, of the pre-polygraph interview of Ryan Weemer, fellow member of Defendant's squad and virtual co-defendant as he is facing unpremeditated murder charges under the Uniform Code of Military Justice at Marine Corps Base Camp Pendleton. The brief by the Government seems to implicitly reflect the belief that Weemer will not testify at trial and the pre-polygraph statement will be offered as a substitute. The circumstances of the polygraph germane to this motion are as follows.

In an effort to secure employment as a uniformed Secret Service officer, Weemer was required to undertake a polygraph examination. This examination occurred on or about October 3, 2006. Prior to the polygraph examination, Weemer underwent a series of questions that would provide him with familiarity with the questions to be asked while under examination.  Prior to being asked specific questions, an interviewing agent for the Secret Service had Weemer read and sign an advisement of rights and the agent orally explained the rights advisement. Weemer was specifically informed that any incriminating information provided against him could and would be used against him.

During the course of the interview, Weemer made statements that provided the basis of the investigation into the allegations brought against Defendant Nazario.

At no time has Defendant Nazario had the opportunity to cross examine Weemer as to his statements.

On October 4, 2006, *1 day* after the interview of Weemer, the Naval Criminal Investigation Service initiated an investigation and prepared its first report on the matter on October 9, 2006.

-2-

**MOTION IN LIMINE RE: WEEMER'S POLYGRAPH INTERVIEW**

## II.    ARGUMENT

### A.    Legal Analysis

"The right to confrontation enshrined in the Sixth Amendment includes the right to cross-examine adverse witnesses." *Davis v. Alaska*, 415 U.S. 308, 315 (1974); *U.S. v. Larson*, 460 F.3d 1200, 1206 (9th Cir. 2006). This Sixth Amendment right was most expansively articulated in *Crawford v. Washington*, 541 U.S. 36 (2004). In *Crawford*, the Court held that testimonial statements, made by an unavailable witness, may not be admitted at trial unless the defendant had sufficient opportunity to cross-examine the statements at the time they were made. *Id.* at 51. There are several key points to a *Crawford* analysis:

### 1.    History of the Confrontation Clause

The right to confront accusers dates to Roman times. *Coy v. Iowa*, 487 U.S. 1012, 1015 (1988). In the English common law, the right was best exemplified in *King v. Paine*, 87 Eng. Rep. 584, 585 (1696), where the Court of King's Bench held that the testimony of a deceased witness was not admissible because the defendant was not present when the testimony was taken. *Id.*, *see also Fenwick's Case*, 13 How. St. Tr. 537, 591-92 (H.C. 1696) (No deposition can be read unless adverse party was present at the examination). Early American decisions also illuminate this right. *See State v. Webb*, 2 N.C. 103 (Super L. & Eq. 1794 (decided three years after the Sixth Amendment was ratified, and held that depositions can be read against the accused only if they were taken in his presence).

*Crawford* explained that there are two historical meanings to the Sixth Amendment:

(a) to combat the civil-law mode of criminal procedure and its use of ex-parte examinations against the accused. *Crawford*, 541 U.S. at 51. The Court noted that "leaving the regulation of out of court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitional practices." *Id.*

---

1    (b) the Framers would not have allowed admission of testimonial

2    statements from a witness who did not appear at trial unless he was unavailable to

3    testify and the defendant did not have the opportunity for cross examination. *Id.* at

4    54. "We do not read the historical sources to say that a prior opportunity to cross-

5    examine was merely a sufficient, rather than a necessary, condition for admissibility

6    of testimonial statements. They suggest that this requirement was dispositive and

7    not merely one of several ways to establish reliability." *Id.* at 55-56.

8        **2.    Testimonial Evidence**

9        The Court in *Crawford*, as noted above, held "we do not think that the

10   Framers meant to leave the Sixth Amendment to the vagaries of the rules of

11   evidence, much less to amorphous notions of reliability." *Id.* at 61. Thus,

12   unconfronted testimonial evidence raises constitutional concerns. However, the

13   Court did not provide a precise definition of "testimonial" evidence. *Crawford*

14   notes that various formulations of testimonial statements exist, including (a)

15   formalized testimonial materials, such affidavits, depositions, or prior testimony;

16   (b) ex-parte testimony or its functional equivalent, such as custodial examinations;

17   and (c) statements that declarants would reasonably expect to be used

18   prosecutorially. *Crawford*, 541 U.S. at 51-52. Statements taken by the police in

19   the course of interrogations are testimonial, despite the lack of an express oath,

20   because police interrogations are rife with opportunities for the type of abuse

21   envisioned by the framers of the Sixth Amendment. *Id.* at 52. Moreover, the Court

22   noted that the term "interrogation" is used in its colloquial, not technical, sense. *Id.*

23   at 53, fn 4; *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980).

24       Other courts that have considered *Crawford* have utilized similar

25   definitions of testimonial evidence. *See U.S. v. Maher*, 454 F.3d 13, 21 (1st Cir.

26   2006) (a statement is testimonial if a reasonable declarant would have the capacity

27   to appreciate that the statement is of the sort typically preserved for prosecutorial

28   use); *U.S. v. Saget*, 377 F.3d 223, 228 (2d Cir. 2004) (noting that the core examples

-4-

1  of testimonial statements in *Crawford* all involve "a declarants' knowing responses

2  to structured questions in an investigative environment…"); *U.S. v. Cromer*, 389

3  F.3d 662, 673-674 (6th Cir. 2004) (holding that statements of confidential informer

4  are testimonial and noting with approval the comments of Professor Freidman: "A

5  statement made knowingly to authorities that describes criminal activity is almost

6  always testimonial."  The Court noted that this expansive definition was needed to

7  "ensure that the adjudicative system does not effectively invite witnesses to testify

8  in formal ways that avoid confrontation."  *Id.* (citing *Confrontation: The Search for*

9  *Basic Principles*, 86 Geo. L.J. 1011, 1042-43 (1998)); *U.S. v. Silva*, 380 F.2d 1018

10  (7th Cir. 2004) (denouncing practice of law enforcement, under guise of

11  demonstrating reason for an investigation, of testifying at trial as to statements

12  made by informants); *U.S. v. Summers*, 414 F.3d 1287, 1392. 2005 (determination

13  of what is testimonial centers on the reasonable expectations of the declarant.

14  Expectations separate the flippant remark from true testimony); *U.S. v. Baines*, 486

15  F.Supp.2d 1288, 1300 (D.N.M. 2007) ("while the majority of co-conspirator

16  statements are not testimonial in nature, when such a statement is testimonial it is

17  subject to the requirements of the Confrontation Clause").

18        The question of what constitutes testimonial evidence was last

19  addressed by the Supreme Court in *Davis v. Washington*, 126 S.Ct. 2266 (2006).

20  The Court, after citing *Crawford* with approval, noted that a statement is

21  testimonial "when the circumstances objectively indicate . . that the primary

22  purpose of the interrogation is to establish or prove past events potentially relevant

23  to later criminal prosecution."  *Id.* at 2273-74.

24     **B.**   **Application to the facts of the case**

25        As noted in *Maher*, *Crawford* claims turn on two issues: (1) was the

26  out-of-court statement testimonial and (2) if so, is it admissible for reasons other

27  than the truth of the matter asserted.

28

-5-

### 1.   Weemer's Statement is testimonial

Weemer's statement is testimonial for two reasons.  First, his statement became a "custodial interrogation" within the meaning of *Crawford*.  Second, his statements were those that a reasonable person would expect to become part of a prosecutorial proceeding.

There are several key factors reflected in the transcript that supports the notion that Weemer's statement was both custodial and of such nature that a reasonable person would be aware of later prosecution.

**Factor #1**. The fact that Weemer was being prepped for a polygraph makes his statements analogous to being made under oath.  The interviewing agent, Agent Dezeo, explained, several times, how a polygraph detects falsehood, so Weemer knew that he could not lie.  Once Weemer felt compelled to tell the truth, the effect is the same as Weemer giving statements under oath without Nazario present to cross-examine.

**Factors #2**. On page 2 of the transcript notes that Weemer was told that "this is one of their standard interview rooms that they use for criminals…".  Such a statement creates an atmosphere of custodial interrogation.  Weemer was aware that he was in a room normally used for criminals, that his statements were being audio and video recorded, and that he was not free to get up and leave at any time (*see* page 40 where Weemer had to ask permission to use the rest room – one not in custody does not normally need to ask permission).

**Factors #3.** On page 3-4, Weemer was read, and then waived, his Miranda rights.  In fact, Agent Dezeo told Weemer that his advice of rights form "will sound just like if you're watching television at night a police show and they make an arrest and they read them their rights.  Those are the same rights that I'm going to read to you."

**Factors #4**. On page 6 of the interview transcript, and later references, Agent Dezeo, notes that "if I do have a concern about a certain or a certain group of

-6-

1    questions it'll certainly show me that and then I'll know that there's something
2    there that we need to discuss further."  In essence, this statement placed Weemer on
3    notice that, if he gave any responses that raised any concern, that he would be
4    interrogated further by a law enforcement agent.  This is very strong evidence both
5    that (a) Weemer was in a custodial situation where law enforcement was in control
6    of the conversation (just the type of situation with a propensity for abuse that the
7    Sixth Amendment guards against) and (b) that Weemer, or any reasonable person,
8    was on notice that his statements could be followed-up on by law enforcement and
9    used against him. *See Cromer*, 389 F.3d 662 (Statement made knowing to law
10   enforcement is almost always testimonial); *Summer*, 414 F.3d 1287 (what is
11   testimonial centers on expectations of declarant – Weemer did not make casual
12   remarks, made testimonial confessions that he should have reasonably expected to
13   become prosecutorial)

14           **Factor #5.** On page 75, Agent Dezeo specifically circles back to the
15   Fallujah incident to ask additional questions.  His decision to follow-up on specific
16   points transformed the conversation from a Weemer monologue into an
17   interrogation by law enforcement.

18           **Factor #6.**  The general tone of the interview from Page 75 on is that
19   of an interrogation.  Dezeo specifically tries to be Weemer's "buddy" and draw out
20   information – precisely the type of law enforcement tactic that creates a testimonial
21   situation.

22           **Factor #7.** The interview was eventually passed on to law enforcement
23   for use in prosecution.  The fact that the Secret Service considered the statements to
24   be of sufficient value to a prosecution is a good indication that Weemer should have
25   realized what he was saying could be prosecutorial in nature.

26           **Factor # 8.** At no time has Defendant Nazario ever been given the
27   opportunity to examine Weemer on this statement or any statement.

28           **Factor # 9.** No non-hearsay purpose applies.

-7-

**MOTION IN LIMINE RE: WEEMER'S POLYGRAPH INTERVIEW**

C.     **Application of the law to these facts**

As it is clear from the above described factors, Weemer's statements are testimonial and cannot be admitted without cross-examination unless there is a non-hearsay purpose.  The most common non-hearsay purpose is context – that the statements are not offered to prove truth of the contents but to provide context to other evidence.  This should not be an available non-hearsay purpose in this case.  Weemer does not implicate anyone else on his statement – he does not name Nazario or Nelson.  As a result, his statements do not provide context to their actions.  Nor does his statement provide background evidence to the crime charged – the government has non hearsay evidence available, in the form of military histories and other documents, to describe the Fallujah battle – Weemer's statement is not the only evidence of that information, and thus not admissible for that purpose.

D.     **Rebuttal to Government's Argument for Admissibility**

1.     **Non-testimonial, so _Crawford_ does not apply**

As it argued in its trial brief, the government claims that the statements were non-testimonial and that _Crawford_ does not apply.  This argument is clearly rebutted by the factors listed above.  In addition, the government cites _Leavitt v. Arave_, 383 F.3d 809 (9th Cir. 2004) as support for its non-testimonial argument.  However, that case can be distinguished on the facts.  _Leavitt_ involved the admission, under the excited utterance rule, of statements made to the police by an eventual murder victim.  In this case, there was no exigency, excitement, or other extenuating factors to Weemer's statements.  Weemer provided answers in response to calm, controlled, questioning from law enforcement – the exact opposite of the situation in _Leavitt_.

2.     **Rule 807 "Catch-all"**

In its trial brief, the government argues that Weemer's statement is admissible under the Rule 807 catch-all hearsay exception – that is evidence that

-8-

1    meets sufficient criteria of reliability without falling into one of the predefined

2    hearsay exceptions.  Rule 807 is inapplicable for two reasons.

3              First, the Supreme Court has specifically noted:

4        the guarantee of confrontation is no guarantee at all if it is subject to

5        whatever exceptions Courts from time to time consider 'fair'.  It is not

6        the role of Courts to extrapolate from the words of the Sixth

7        Amendment to the values behind it, and then to enforce its guarantees

8        only to the extent they serve (in the Courts' views) those underlying

9        values.  The Sixth Amendment seeks fairness indeed – but seeks it

10       through very specific means (one of which is confrontation) that were

11       the trial rights of Englishmen.  It 'does not suggest any open –ended

12       exceptions from the confrontation requirement to be developed by the

13       Courts.

14             *Giles v. California*, 128 S.Ct. 2678, 2692 (2008) (quoting *Crawford*,

15   541 U.S. at 54).

16             Second, Rule 807 does not apply to this circumstance because

17   Weemer's statement, while material, is not more probative than other evidence, nor

18   are the interests of justice served by its admission.  Presumably, the government has

19   available to it the testimony of other live witnesses whose testimony offers the

20   same information as Weemer's – i.e. that the Marines were in Fallujah in 2006, that

21   they engaged in house to house fighting, and that insurgents were allegedly killed

22   inside a house in Fallujah.  Because the government has those other means, then

23   Weemer's statement is not more probative than other evidence.

24             Moreover, the interests of justice are not served by admission of the

25   Weemer statement.  To the contrary, the interests of justice are specifically injured

26   by admission of a statement from an unavailable witness, made to law enforcement,

27   that the defendant does not have the opportunity to question on cross examination.

28

1

            **3.**      **Statement Against Interest**

2

        The government also argues that Weemer's statement qualified under

3

Federal Rule of Evidence 804 (b) (3) as a statement against interest.  This argument

4

is correct but for the *Crawford* analysis above.

5

**III.**     **CONCLUSION**

6

          In light of the totality of the circumstances, the unconfronted

7

statement of Weemer is clearly testimonial in nature and cannot be used by the

8

Government in any manner during this trial.

9

        Respectfully submitted this 18th day of August 2008.

10

11

Dated:  August 18, 2008

12

                        By:/S/ Douglas L. Applegate

13

                         Kevin B. McDermott

14

                         Douglas L. Applegate

15

                         Joseph M. Preis

16

                         Attorneys for Defendant,
                         JOSE LUIS NAZARIO, JR.

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION IN LIMINE RE: WEEMER'S POLYGRAPH INTERVIEW**

1

## PROOF OF SERVICE

2

I am employed in the County of Orange, State of California, am over the age of 18 and not a party to the within action. My business address is Pepper Hamilton LLP, 4 Park Plaza, Suite 1200, Irvine, California 92614. I am over the age of 18 and not a party to the action. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing.

3

4

5

On the date set forth below, I served the foregoing documents described MOTION IN LIMINE on all interested parties in this action by placing [  ] the original [ x ] a true copy thereof in a sealed envelope addressed as follows:

6

7

| Jerry A. Behnke<br>Charles J. Kovats<br>Assistant United States Attorneys<br>3880 Lemon Street, Suuite 210<br>Riverside, Ca 92501 | |

8

9

10

**[X]    BY E-MAIL OR ELECTRONIC TRANSMISSION**: I caused a copy of the document(s) to be sent from e-mail address Jerry.Behnke @usdog.gov to the persons at the e-mail addresses listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

11

12

[X]    (*Federal*) I declare under penalty of perjury under the laws of United States of America that the above is true and correct.

13

14

I declare that I am employed in the office of a member of the bar of this Court at whose direction this service was made. Executed on August 18, 2008, at Irvine, California.

15

16

17

18

_____
CHRISTAL AIKEY

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE