THOMAS P. O'BRIEN
United States Attorney
SHERI PYM
Assistant United States Attorney
Chief, Riverside Branch Office
JERRY A. BEHNKE (SBN: 180462)
CHARLES J. KOVATS (SBN: 184185)
Assistant United States Attorneys
     3880 Lemon Street, Suite 210
     Riverside, California 92501
     Telephone:  (951) 276-6211
     Facsimile:  (951) 276-6202
     E-mail: Jerry.Behnke@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. ED CR 07-127(A)-SGL |
|---|---|---|
| Plaintiff, | ) | <u>OPPOSITION TO DEFENDANT'S</u> |
|  | ) | <u>MOTION IN LIMINE RE WEEMER'S</u> |
| v. | ) | <u>POLYGRAPH INTERVIEW</u> |
| JOSE LUIS NAZARIO, JR., | ) |  |
| Defendant. | ) |  |

   Plaintiff, United States of America, through its counsel of record, Assistant United States Attorneys Jerry A. Behnke and Charles J. Kovats, hereby opposes defendant's motion in limine regarding Ryan Weemer's pre-polygraph interview.

   This opposition is based on the attached points and authorities, the government's trial memorandum, the testimony of Special Agent DeZeeuw, the files and records in this matter, and

///

///

any additional evidence or argument as may be presented at the hearing on the matter.

DATED: August 20, 2008          Respectfully submitted,

                                          THOMAS P. O'BRIEN
                                        United States Attorney

                                        SHERI PYM
                                        Assistant United States Attorney
                                        Chief, Riverside Office

                                            /s/
                                      _____
                                        JERRY A. BEHNKE
                                        CHARLES J. KOVATS
                                        Assistant United States Attorneys

                                              Attorneys for Plaintiff
                                            United States of America

**MEMORANDUM OF POINTS AND AUTHORITIES**

The only remaining issue regarding admissibility of the employment pre-polygraph interview of Ryan Weemer is whether Weemer's statements to SA Deezeuw were "testimonial" within the meaning of <u>Crawford v. Washington</u>, 541 U.S. 36 (2004). While the Supreme Court has yet to precisely define "testimonial" for purposes of Confrontation Clause analysis, the Court has explained that the Confrontation Clause applies to "'witnesses' against the accused-in other words, those who 'bear testimony' . . . 'Testimony,' in turn, is typically, '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" <u>Id.</u> at 51 (citations omitted). In this regard, statements made to law enforcement with the full understanding that the statements will be used in investigating and prosecuting a crime are within the scope of the Confrontation Clause. <u>United States v. Cromer</u>, 389 F.3d 662, 674 (6th Cir. 2005). "The proper inquiry, then, is whether the declarant intends to bear testimony against the accused." <u>Id.</u> at 675. This rule protects against possible abuses by the government in producing testimony "with an eye towards trial." <u>United States v. Cervantes-Flores</u>, 421 F.3d 825, 833 (9th Cir. 2005)(quoting <u>Crawford</u>, 541 U.S. at 56 n.7).

None of the Confrontation Clause concerns are present here. SA DeZeeuw's interview of Weemer was not conducted with an eye towards trial. There is no evidence at all to suggest that SA DeZeeuw questioned Weemer with the intent to build a criminal case and no evidence to suggest that Weemer intended that his

statements be used against defendant. In fact, at no time during the interview was defendant even mentioned by name by either Weemer or SA DeZeeuw.

Defendant cites several factors to argue that the interview amounted to an "interrogation."[1]

Defendant argues that because SA DeZeeuw explained the importance of being truthful, the statements are "analogous to being made under oath."[2] However, the statements were not made under oath and, in any event, this factor does not establish that either Weemer or SA DeZeeuw were engaging in the interview with the purpose of "bearing testimony" against defendant or building an investigation "with an eye towards trial." See Crawford, 541 U.S. at 56. While this factor goes to establishing the truthfulness and reliability of the statements, it does not

---

[1] Defendant, and indeed the Court as well, seem to conclude that if there is an interrogation, Crawford applies. While the Supreme Court did refer to police interrogations in Crawford, the Court also explained that various definitions of "interrogation" exist and that the Court did not need to further explain which applied in that case because the statements at issue qualified as testimonial "under any conceivable definition." Crawford, 541 U.S. at 53 n.4. There, a witness gave a tape-recorded statement to police during an investigation of a stabbing committed by the witness' husband. Id. at 38. This question-and-answer of the witness by police was conducted for the purpose of building the criminal case against the accused. Here, as SA DeZeeuw testified, the question-and-answer was solely for the purpose of assessing Weemer's suitability for employment and establishing his psychological "base line" for the polygraph examination.

[2] Defendant argued during oral argument that this is analogous to other "under oath" statements like depositions. That is incorrect for purposes of Crawford. A deposition is conducted with an eye towards trial. In fact, depositions are only conducted as a part of ongoing litigation. That is what makes them testimonial, not the fact that an oath is administered.

establish that the statements were testimonial under Crawford.

Second, defendant cites the fact that the interview was conducted in one of the rooms used for criminals as evidence that the statement was made in an atmosphere of a custodial interrogation. Defendant further cites the fact that SA DeZeeuw advised Weemer of his rights. However, at the same time, SA DeZeeuw explained to Weemer that it was not a criminal interview. SA DeZeeuw told Weemer, "Now obviously this is not a criminal interrogation it's an applicant screening exam . . ." (Transcript p. 3). Additionally, DA DeZeeuw's comment that the interview room is normally used for criminals is actually evidence that this was NOT a criminal custodial interrogation. Certainly, an agent conducting a criminal interrogation would not tell the suspect the interview room is used for criminals. The statement by SA DeZeeuw conveyed to Weemer that he was different - he was not a criminal. Also, SA DeZeeuw explained to Weemer that during criminal interviews the outside speakers are on, but that he would unplug them for Weemer's interview, stating that he unplugs it for applicant exams because "the rest of the office doesn't need to know" what Weemer says. (Transcript p. 5).

Defendant and the Court also placed great emphasis on the allegation that Weemer was not free to use the restroom in arguing this was analogous to a custodial interrogation.[3] The

---

[3] For instance, the jurors in this case were also not free to just get up and leave the courtroom during voir dire. The fact that they would have had to ask permission did not mean they were in custody.

transcript shows that, when Weemer asked, SA DeZeeuw was willing to allow him to go, but that Weemer decided to remain and finish the interview.  The fact that Weemer had the manners to politely ask to use the restroom does not demonstrate that he was in custody or its functional equivalent.  In any event, even if he was not free to leave, that would not convert his statements to testimonial statements since, again, they were not made with an eye toward trial.

Defendant also cites the fact that SA DeZeeuw said that he would and then did ask follow up questions during the interview.[4]  As SA DeZeeuw testified, the purpose for these follow up questions was strictly related to the applicant process and were not geared towards building a criminal case.  Follow up questions were important to determine if certain acts of Weemer were justified or not (which goes directly to his suitability for employment) and to determine how Weemer felt about and perceived the acts (which would have a direct impact on the polygraph examination to follow).  In fact, as SA DeZeeuw testified, if he were building a criminal case he would have asked many more detailed questions.  At the very least he would have asked for the names of the other persons involved and precisely where the shooting occurred, but he did not, because his sole purpose was to establish Weemer's suitability for employment and to establish Weemer's psychological profile before the actual polygraph exam.

---

[4] The Court too placed great weight on the "structured" questioning that occurred.

1  That is why SA DeZeeuw asked questions related to possible
2  justifications for the shooting and why he engaged in the
3  "structured" follow up questions when Weemer raised issues of
4  concern.
5      As SA DeZeeuw clearly explained to Weemer at the outset of
6  the interview, the purpose of the interview was "the next step in
7  the overall process of becoming an employee with the Secret
8  Service."  (Transcript, p. 2).  The interview was not designed to
9  build a criminal case against anyone and neither Weemer nor SA
10 DeZeeuw, at the time of the interview, had "an eye towards
11 trial."
12     Weemer's statements to SA DeZeeuw should be admitted.