```
 1                 UNITED STATES DISTRICT COURT

 2                 CENTRAL DISTRICT OF CALIFORNIA

 3                       EASTERN DIVISION

 4                          - - -

 5          HONORABLE STEPHEN G. LARSON, JUDGE PRESIDING

 6                          - - -

 7
   UNITED STATES OF AMERICA,         )
 8                                    )
                        Plaintiff,   )
 9                                    )
             vs.                      )  No. ED CR 07-00127-SGL
10                                    )
   JOSE LUIS NAZARIO, JR.,            )
11                                    )
                        Defendant.   )  Trial Day Three
12   _____)  Morning Session

13

14          REPORTER'S TRANSCRIPT OF TRIAL PROCEEDINGS

15                   Riverside, California

16                 Friday, August 22, 2008

17                        9:13 a.m.

18

19

20

21

22

23             THERESA A. LANZA, CSR, RPR
             Federal Official Court Reporter
24             3470 12th Street, RM. 134
             Riverside, California  92501
25                  (951) 274-0844
                WWW.THERESALANZA.COM
```

```
 1   APPEARANCES:

 2   On behalf of Plaintiff, United States of America:

 3                        United States Attorney's Office
                          By: Jerry Behnke
 4                            Charles J. Kovats
                          Assistant United States Attorneys
 5                        3880 Lemon Street,
                          Suite 210
 6                        Riverside, California 92501
                          (951) 276-6210
 7

 8   on behalf of Defendant Jose Luis Nazario, Jr.:

 9                        Law Offices of Kevin Barry McDermott
                          By:  Kevin Barry McDermott
10                        17452 Irvine Boulevard,
                          Suite 200
11                        Tustin, California 92780
                          (714) 731-5297
12
                          Douglas L. Applegate
13                        18301 Von Karmon
                          suite 210
14                        Irvine, California 92612
                          (888) 583-2266
15
                          Pepper Hamilton LLP
16                        By:  Joseph M. Preis
                          Suite 1200
17                        4 Park Plaza
                          Irvine, California 92614-5955
18                        (949) 567-3500

19                        Law Offices of Vincent J. LaBarbera, Jr.
                          By:  Vincent J. LaBarbera, Jr.
20                        600 West Santa Ana Boulevard,
                          Suite 950
21                        Santa Ana, California 92701
                          (714) 541-9668
22

23   Also present:        Mark Fox, Special Agent

24

25
```

```
 1                          I N D E X

 2                                              Page

 3    PROCEEDINGS..................................    4

 4

 5

 6
      WITNESS          DIRECT      CROSS     REDIRECT      RECROSS
 7    JERMAINE ALLEN NELSON

 8    By Mr. Behnke       17

 9

10
      WITNESS          DIRECT      CROSS     REDIRECT      RECROSS
11    RYAN GENE WEEMER

12    By Mr. Behnke       28
      By Mr. Johnson                 36
13

14

15

16            EXHIBITS            RECEIVED

17            (None)

18

19

20

21

22

23

24

25
```

```
 1      Riverside, California; Friday, August 22, 2008; 9:13 A.M.
 2                               -oOo-
 3           (Proceedings outside of the jurors' presence.)
 4           THE CLERK:  Call the case of plaintiff, United States
 5   of America, versus defendant, Jose Luis Nazario, Jr., case
 6   number ED CR 07-00127-SGL.
 7           May we have counsel please come forward and state
 8   your appearances for the record.
 9           MR. BEHNKE:  Jerry Behnke for the United States.
10   Mr. Kovats is also here; he's out making copies of a document      00:07
11   we may need this morning.
12           I would like the record to reflect that for these
13   proceedings this morning, Special Agent Fox is not present and
14   will not be present.
15           THE COURT:  Very well.                                     00:07
16           Good morning to you all.
17           MR. McDERMOTT:  Kevin McDermott for defendant
18   Jose Nazario.  Douglas Applegate, Joseph Preis, Vincent
19   LaBarbera, and Emery Ledger.
20           MR. JOHNSON:  On the ancillary matter regarding the        00:07
21   witnesses, Chris Johnson on behalf of Sergeant Ryan Weemer, who
22   is present.
23           THE COURT:  Good morning.
24           MR. LOW:  Judge Larson, good morning to you, Sir.
25   Thanks for having us.  Joseph Low on behalf of Sergeant           00:07
```

1   Jermaine Nelson, who is present, out of custody, Sir.

2          **THE COURT:**  Good morning.

3          We're on calendar this morning, we have the trial at

4   9:30, but the Court was asked to take up the issue by the

5   government of the witnesses beforehand, and I thought that was          00:07

6   a good idea, to see where we were on that.

7          Mr. Behnke, have you had conversations with counsel

8   for the witnesses?

9          **MR. BEHNKE:**  No, I have not, your Honor.

10          **THE COURT:**  Very well.          00:08

11          Counsel, I'll begin with you.  The Court has received

12   an application from the government to order Sergeant Weemer and

13   Sergeant Nelson to testify.  The Court had issued that order.

14   They have been ordered to testify in this trial.

15          The only thing that I have received that has changed          00:08

16   materially since the last time is I did receive a letter from

17   the Marine Corps assuring the Court that they would honor the

18   immunity that has been issued.  I know that was a concern that

19   both you and Mr. Low expressed the last time.

20          I don't know if you have had a chance to see that          00:08

21   letter or if you received a copy of that.  I guess in advance

22   of proceeding today, we're interested in your client's

23   position.

24          **MR. JOHNSON:**  Your Honor, with respect to the letter

25   from the Marine Corps, that is a letter from the staff judge          00:08

1  advocate who is the attorney for the convening authority, and

2  essentially what the SJA says is he believes that the immunity

3  given by this court would flow down to any military court

4  martial and any activity that take place there.

5         However, this letter is not use-immunity and    00:09

6  derivative-use-immunity pursuant to the manual for court

7  martial, particularly section 704.  Only the commanding general

8  is capable of giving immunity, and in this case he still has

9  not done it.  We're still back at that fundamental principal.

10 If all he has to do is sign his name to an immunity letter and    00:09

11 present that, that would take care of this issue.  It still has

12 not been done; so in terms of factually, are we any different

13 now than we were before, the defense would respectfully say we

14 are not.  We still do not have actual immunity from the

15 convening authority.    00:09

16        More importantly, since our last hearing,

17 Sergeant Weemer has gone through an Article 32 investigation,

18 charges have been referred to court martial, and he is going to

19 be arraigned this coming Monday on charges of murder and

20 dereliction of duty.    00:10

21        If the Court holds him in contempt, he is going to be

22 denied the opportunity of entering his plea on Monday and

23 getting his own proceedings going.  And I think, as the Court

24 is aware, if convicted of those charges, he faces possible life

25 imprisonment.  So where we are today is no fundamentally    00:10

1   different than where we were at the grand jury proceedings.

2          So I totally agree that the Court has done all of the

3   proper procedural moves in terms of the government has obtained

4   the immunity, the government has applied to the Court, the

5   Court has ordered the witnesses to testify.  But practically          00:10

6   we're essentially on no different footing today in any of the

7   facets than we were at our last hearing.  We still do not have

8   general court martial immunity.  And what has fundamentally

9   changed is he is about to be arraigned on charges of murder and

10  dereliction of duty this coming Monday.  So practically, we're      00:11

11  in no different position than we were before, and the defense

12  respectfully would suggest that the Court's factual findings

13  and conclusions of law from the last procedure should apply

14  here today.

15      **THE COURT:**  It's implicit from everything you've          00:11

16  said, Counsel, but are you saying that your client is refusing

17  to testify?

18      **MR. JOHNSON:**  Under the precise factual scenario we

19  have today, yes, Sir, that's correct, respectfully.

20      **THE COURT:**  Mr. Low?  I have the same questions for       00:11

21  you and your client.

22      **MR. LOW:**  Yes, sir.

23          The direct answer to your question is, no, my client

24  will not be testifying today.

25          If you would like to ask more about the letter, I can      00:11

1    tell you a lot more about it; however, the direct answer is,

2    no, he will not be testifying.

3         **THE COURT:**  I would like to hear your thoughts, and I

4    appreciate Mr. Johnson's thoughts, but it's hard for this Court

5    to understand how the SJA could say something on behalf of the          00:11

6    Marine Corps and that not be the situation.

7         **MR. LOW:**  Yes.  And from your position, I'd feel the

8    exact same way.  What's interesting about that is the reason

9    why that letter was generated -- I know, I was there during the

10   time -- we were in court with the prosecutors, and they were          00:12

11   asking for I believe a continuance, or something along that

12   lines, to deal with a procedural issue only, and the issue came

13   up.

14        **THE COURT:**  I'm sorry to interject, but just to make

15   the record clear, I'm not sure who asked for that letter.  It          00:12

16   was unsolicited, from the Court's perspective.  The way it was

17   written, it seemed to be responding to a request.  I'm not

18   really sure who made that request, but it was not the Court.

19        **MR. LOW:**  I put as an attachment to a motion I filed

20   on a prior occasion in front of this Court some e-mails, and          00:12

21   the e-mails said that without a letter stating that there will

22   not be any use of the information, we won't be able to testify.

23        And that letter was my E-mail, my request, was very

24   specific.  Because under the rules, the only one person can

25   sign any letter that has any way, any authority, any meaning,          00:13

1  and that's the convening authority.  That's a title.  We've all

2  called it the commanding general, but that's the person who

3  decides.

4          The SJA in this case is nothing more than an advisor

5  to that person.  So that advisor, as you can imagine, has no          00:13

6  ability to contract, if you will.  His opinion is no binding

7  authority, whatsoever.  And what's really interesting, Sir, is

8  that although out in town we don't always understand that,

9  there's no reason why we should, who does know that and who

10  does understand that and who does deal with that on a very          00:13

11  daily basis purposely chose not to have the convening authority

12  sign that letter, when I specifically asked for it, not once,

13  not twice, but four different times.  And he even said, It's

14  interesting you all won't have the convening authority sign it.

15          So what that should tell you is that why is it that          00:14

16  the only one person who can sign it and give us the assurances

17  that we need, won't do it, after being told about it in a court

18  in front of a military judge, still have not done it.  That's

19  why we're here.  It's suspicious, sir, and that's why we are

20  going to be asserting our rights and we will not be testifying.          00:14

21          I hope I've given you a little more enlightenment on

22  that letter and why it's not meaningful in any way.

23              **THE COURT:**  Thank you, Counsel.

24          **MR. LOW:**  Yes, sir.

25              **THE COURT:**  Let me hear from the government.          00:14

1          **MR. BEHNKE:**  Simply put, your Honor, the government

2    believes that the arguments that are being offered by the

3    witnesses' counsel is flat wrong.

4          The staff judge advocate is the judge for the general

5    that's the convening authority in this case.  And rather than          00:14

6    simply writing a letter to this court stating that the effects

7    of the 6002 order issued by Your Honor would flow to the court

8    martial proceeding, the letters state -- and just so the record

9    is clear, there were letters issue on behalf of both

10   Ryan Weemer and Jermaine Nelson -- the letters state, point          00:15

11   blank, "the command and military prosecution will not attempt

12   to obtain or use Sergeant Nelson and also Sergeant Weemer's

13   compelled testimony offered in the Nazario case against them at

14   his subsequent military court martial except in prosecution for

15   perjury, false statements, or otherwise failing to comply with          00:15

16   the order to testify."

17         It is a straightforward, clear promise from the

18   lawyer representing the convening authority in this case that

19   the military will not use or not even attempt to obtain the

20   compelled testimony from these proceedings.  When we were last          00:15

21   in this court on the prior matters, this is exactly what both

22   witnesses demanded.  And this is exactly what I was afraid of

23   when this issue came up the last time we were here.  I

24   mentioned to Your Honor that this is going to be a slippery

25   slope; whatever we get from the military, the witnesses are          00:16

1    going to say it's not enough.

2            I don't think the witnesses are really concerned

3    about any Fifth Amendment claim.  I don't think they are really

4    concerned about the use of their compelled testimony in the

5    court martial proceedings.  I don't think anybody in this                   00:16

6    courtroom can reasonably say, in light of this letter and this

7    Court's order, that there is any fear of further use of these

8    statements against them.

9            I respect the statements from counsel, that they have

10   spoken to their clients and their clients are not going to        00:16

11   testify.  But before we conclude here today, I believe that the

12   government is entitled to call the witnesses to the stand and

13   test whether or not they are, in fact, going to commit

14   contempt, potentially expose themselves to criminal contempt,

15   and make sure that the witnesses themselves, not just the         00:17

16   lawyers, understand all those ramifications.

17           **THE COURT:**  And you raise some points there, Counsel,

18   that I think warrant or merit a response from the Court,

19   because I tend to agree with you.

20           Just to be clear, my ruling the last time on            00:17

21   releasing these witnesses, even prior to the letter from the

22   Marine Corps, was predicated on my agreement with the

23   government that sufficient immunity had already been

24   established as a matter of law.  There is absolutely nothing

25   that the United States Marine Corps can do with the testimony    00:17

1   that Sergeant Weemer and Sergeant Nelson would give in this

2   court.  Period.  The Court has ruled on that.  This Court has

3   ruled on that.  There is nothing that can be done with that

4   testimony.

5          I made it clear, I think, in my order that I                00:17

6   recognized the subjective views of the individual sergeants,

7   and I'm not in a position to get inside their mind and know

8   what they are thinking or not thinking, and of course that's

9   compounded by the positions that their attorneys have taken

10  publicly, and I presume privately, in their own conversations   00:18

11  with these witnesses.

12         But there's no doubt in my mind that as a matter of

13  law, nothing that is said in this courtroom can be used out at

14  Camp Pendleton.  Period.

15         Where that leaves this Court is what do with that.         00:18

16         There's no question that both of these men are in

17  contempt of this Court's order.  I previously placed both of

18  them in prison to try to compel them to testify.  The reason

19  that I released them was that it was clear to me, based upon

20  their own testimony and the positions of their lawyers in        00:18

21  court, is that would not have the compulsive effect of bringing

22  them to testify.

23         You're probably dead on right, Mr. Behnke, that this

24  is not about a fear of their testimony being used against them.

25  My suspicion is, given what these men have been through,         00:19

1    there's probably not a whole lot in this world that they do

2    fear.  Certainly, spending a few days or a few weeks in the

3    county jail is not something that registers high on their fear

4    radar.  And that's understandable.

5        Under a civil contempt proceeding, this Court cannot

6    punish these defendants for failing to abide by the Court's

7    order.  And I reached the conclusion that that's all I would

8    have been doing by keeping them in prison is punishing them for

9    not abiding by the court order.

10       You raised the issue of criminal contempt.  That's a

11   whole different ball game, and I think that both of these

12   individuals need to be fully instructed, and I want to make

13   sure they do understand, that the differences between civil

14   contempt, which is what we've been talking about up to this

15   point, and criminal contempt.

16       That's where I'm at on this.

17       What I need to know from you, Counsel, is what are

18   you seeking?  Are you seeking to call these witnesses now

19   outside of the presence of the jury?  Having a hearing at

20   another time?  What is it specifically that you are requesting?

21       **MR. BEHNKE:**  My request would be, in light of the

22   representations that have been made by their attorneys, that

23   the government call the witnesses out of the presence of the

24   jury, just in case the witnesses do continue to persist as

25   their attorneys state.  I don't think it is necessarily

00:19
00:19
00:19
00:20
00:20

```
1    appropriate, at least the way the proceedings stand now, for
2    Sergeant Nazario's sake, to have the jury hear the refusal to
3    testify and speculate as to what those reasons might be.
4           So my request would be to call the witnesses out of
5    the presence of the jury.  First inquire of the witnesses to        00:20
6    determine whether or not they are going to actually answer
7    questions.  If they do refuse to answer questions, then it
8    would be my intention to advise them to ensure that they are
9    aware of not only the court's order but the letter from the
10   staff judge advocate, as well as make sure that they understand    00:21
11   the consequences of their actions and to proceed from there,
12   but to do that outside of the presence of the jury.
13          THE COURT:  Very well.
14          Mr. Johnson, is there any legal objection to the
15   procedure proposed by the government?                               00:21
16          MR. JOHNSON:  I have neither a legal or a practical
17   objection.
18          THE COURT:  Mr. Low, is there any legal objection to
19   the procedure proposed by the government?
20          MR. LOW:  Yes, Sir.                                          00:21
21          In effect, what Mr. Behnke is now saying to us is
22   that he doesn't believe me, as an officer of the Court that,
23   A), I've done my job; B) that I've advised my client fully;
24   that C), my client has asked me all of the questions and all
25   possible defenses; and D) that he has made his choice.  So         00:21
```

1   basically we're calling my reputation into question.

2           Okay.  That's all right.  I don't mind.  But now what

3   I think Mr. Behnke would really like to do is put my client on

4   the stand so he can start to build a case today for future

5   criminal contempt proceedings.  And based on that, I'm going to      00:21

6   object because it has no relevance at this point based on the

7   fact that I've already answered the questions necessary for

8   what you all are doing here.

9           I will object.

10          **THE COURT:**  Your client has a right, certainly, to      00:22

11  invoke his Fifth Amendment right to not answer the questions.

12  The government has the right to ask him a question to which

13  he's going to invoke.

14          **MR. LOW:**  Yes, sir.

15          **THE COURT:**  Would you agree with that?                  00:22

16          **MR. LOW:**  He has the right, yes, Sir.

17          **THE COURT:**  And that is what I think Mr. Behnke is

18  asking to do is simply have your client called as a witness.

19          Now, whatever Mr. Behnke is or is not accepting with

20  respect to your representations, that's between you and         00:22

21  Mr. Behnke.

22          **MR. LOW:**  Yes, sir.

23          We'll just go and waist a lot of time.  But it's

24  okay, it's his to waist.

25          **THE COURT:**  I appreciate your perspective.             00:23

```
 1              We're going to take a brief recess and then we'll
 2    take this matter up.
 3              Thank you, counsel.
 4              (Whereupon a brief recess was held.)
 5              (Whereupon, proceedings were held                    00:30
 6               in-camera and remain sealed.)
 7              (Whereupon, the trial resumes.)
 8         THE COURT:  We're back on the record outside the
 9    presence of the jury.
10              Mr. Behnke, you may call your first witness.        01:12
11         MR. BEHNKE:  Yes, Your Honor.
12              The Government calls Jermaine Nelson.
13         THE CLERK:  Do you solemnly state that the testimony
14    you may give in the cause now pending before this Court shall
15    be the truth, the whole truth, and nothing but the truth, so
16    help you God?
17         THE WITNESS:  Yes, I do.
18         THE CLERK:  Please state your full name and spell
19    your last name for the record.
20         THE WITNESS:  Jermaine Nelson, J-E-R-M-A-I-N-E;          01:13
21    middle name, Allen, A-L-L-E-N; last name, Nelson, N-E-L-S-O-N.
22         THE COURT:  Counsel, you may proceed.
23         MR. BEHNKE:  Your Honor, with the Court's permission,
24    I'd like to read into the record the Court's order dated
25    August 11, 2008.                                              01:13
```

1          **THE COURT:**  You may proceed.

2          **MR. BEHNKE:**  Pertinent portions of an order issued by

3    this Court on August 11, 2008, reads as follows:

4          "Now, therefore, it is ordered, pursuant to 18 USC

5    Section 6002, that Jermaine Nelson give testimony or provide

6    other information which he refuses to give or to provide on the

7    basis of his privilege against self-incrimination as to all

8    matters about which he may be interrogated in the course of

9    these proceedings.

10          "It is further ordered that no testimony or other

11    information compelled under this order or any information

12    directly or indirectly derived from such testimony or

13    information shall be used against Jermaine Nelson in any

14    criminal case, except that he shall not be exempted by this

15    order from prosecution for perjury, giving a false statement,

16    or otherwise failing to comply with this order."  Dated the

17    11th of August, 2008.  Signed the Honorable Stephen G. Larson,

18    United States District Judge.

19                              **EXAMINATION**

20    BY MR. BEHNKE:

21    Q    Sergeant Nelson, did you hear everything that I just said?

22    A    Sir, at this time, I would like to plead the Fifth

23    Amendment.

24    Q    Sergeant Nelson, back on November 9, 2004, in the morning

25    hours in Fallujah, Iraq, inside a house, did the defendant,

1  Jose Nazario, order you to shoot and kill an unresisting

2  detainee?

3  A    Sir, at this time, I would like to plead the Fifth

4  Amendment on that.

5          MR. BEHNKE:  Your Honor, at this point, I think it's          01:15

6  appropriate to engage in the inquiry that we discussed in

7  chambers to ensure that the witness understands the

8  ramifications of what he is now doing.

9          THE COURT:  I thought you indicated, Counsel, that

10 you had one further question that you were going to ask.          01:15

11         MR. BEHNKE:  Oh, yes.  Thank you, Your Honor.

12 BY MR. BEHNKE:

13 Q    You stated that you're asserting your Fifth Amendment

14 privilege against self-incrimination.

15         Is it your intention to assert your Fifth Amendment          01:15

16 privilege against self-incrimination as to any questions that I

17 might ask you about what occurred in Fallujah, Iraq, on

18 November 9, 2004?

19 A    Sir, at this time, I'd like to plead the Fifth Amendment

20 on that.          01:16

21 Q    Let me try to ask it a little simpler:  Are you going to

22 plead the Fifth on any questions that I might ask you about

23 this topic?

24 A    Sir, I'd like to plead the Fifth Amendment on that.

25         MR. BEHNKE:  Unless The Court has additional          01:16

1  questions, Your Honor, I think at this point we should ensure

2  that the witness understands what he's doing.

3          **THE COURT:**  Thank you, Counsel.

4          **MR. BEHNKE:**  Thank you, Your Honor.

5          **THE COURT:**  Mr. Low.                                01:16

6          **MR. LOW:**  Thank you, sir.

7          Again, my name is Joseph Low.  I'm a retained private

8  lawyer.  I've been retained by Sergeant Jermaine Nelson to

9  represent him not only in his criminal court-martial currently

10  pending, U.S. v. Sergeant Nelson, aboard Camp Pendleton,        01:17

11  California; but in addition, I've been retained by

12  Sergeant Nelson to represent him in both proceedings before

13  yourself as well as Judge Percy Anderson in the civil contempt

14  proceedings, and then again today in his testimony before this

15  trial, U.S. v. Nazario, as well as his potential or future       01:17

16  case.  I've been retained to give him advice with regards to

17  any case that may be filed, which would be U.S. v.

18  Jermaine Nelson, which may be filed out here in town.

19          Having said that, I've spent a significant amount of

20  time with Sergeant Jermaine Nelson, advising him as to what his  01:17

21  rights are, as to what his defenses are, what his rights are

22  not, and what his options are.

23          After doing this on at least five to seven different

24  occasions, I can tell you that Sergeant Nelson has asked me a

25  variety of questions on a number of scenarios.  I've read a      01:17

1    variety of case law that I've shown to him and I've explained

2    to him and that we've discussed with one another, and I can

3    tell you the following as a result, Sir:

4          And that is that Sergeant Jermaine Nelson has been

5    advised of the following:  And that is that with regard to          01:18

6    today's proceedings, that he has been subpoenaed to testify;

7    that that subpoena to testify is a valid subpoena and that it

8    does compel him to present himself before this Court today in

9    preparation for testimony; second, that with regards to that

10   testimony, that the judge, Your Honor, sir, issued with that an     01:18

11   immunity order, which I explained to him was designated a use

12   immunity order and that the use immunity order says that he can

13   testify here in this Court and that this Court, this Court,

14   will not use that testimony against him in any way at any other

15   criminal proceeding.                                                 01:19

16         Lastly, Sir, I also explained to Sergeant Nelson that

17   if he invokes his Fifth Amendment right, which technically,

18   according to the order signed by you, Sir, does not apply, as a

19   result, he may be found or held in criminal contempt.  And I

20   explained to him the difference between criminal contempt           01:19

21   versus civil contempt; and, specifically, I told him that

22   unlike civil contempt -- which is nothing more than putting him

23   in prison to coerce or compel him to testify, it's non

24   punitive -- that criminal contempt is different and that it

25   could be punitive; and, therefore, he could actually be found       01:19

guilty of a crime, either a misdemeanor or a felony, and as a

result, could be tried by a jury, depending on which type,

felony or misdemeanor, and as a result, suffer a Federal

conviction, and most importantly, as a result, could be

punished and sentenced to jail time.                                    01:20

        I explained to Sergeant Nelson that if it was the

misdemeanor version, he would be looking at a maximum

punishment of six months, which could be executed immediately

starting today, or if he is charged with felony contempt, then

it would be a longer process.  He'd have a right to a jury            01:20

trial, and if found guilty, he could be facing more severe

punishment that would exceed six months.

        Having explained those rights and those defenses and

those options to Sergeant Nelson, I was confident at all times

that Sergeant Nelson was not under the influence of any drugs        01:20

or alcohol; that he was of sound mind and body; that he had no

reservations whatsoever of his ability to comprehend what it

was that we spoke about; and that he did ask all of the

questions that he had.

        As a result, it's my understanding that                      01:20

Sergeant Nelson will be invoking his Fifth Amendment right to

not incriminate himself.

        **THE COURT:**  Counsel, have you fully advised your

client that this Court has not only ruled that as a matter of

law that this Court cannot use anything, as you indicated, that      01:21

1  he states to prosecute him or in a prosecution of him, but that

2  no court in this country, including a military court, can use

3  anything that he says, that that has been a finding of this

4  Court?

5         **MR. LOW:**  Sir, I did tell him that was the finding of         01:21

6  this Court.  I did tell him that, yes, Sir.

7         **THE COURT:**  Have you further advised him of the

8  position taken by the staff judge advocate?

9         **MR. LOW:**  Yes, Sir.  I told him that the advisor to

10 the convening authority wrote us a letter, and I explained to         01:21

11 him all of the things that went along with that.  Yes, Sir, I

12 have advised him of the letter.  Yes, Sir.

13        **THE COURT:**  Very well.

14        Sergeant Nelson, did you understand everything that

15 your attorney just stated on the record?         01:21

16        **THE WITNESS:**  Yes, I do, Sir.

17        **THE COURT:**  Did you understand everything that

18 Government counsel stated on the record?

19        **THE WITNESS:**  Yes, I do, Sir.

20        **MR. BEHNKE:**  Your Honor, I just had a couple of         01:22

21 points that I think are also important to address, given the

22 fact that this particular witness is currently a sergeant in

23 the United States Marine Corps, regarding potential

24 consequences for the conduct he's engaging in.

25        **THE COURT:**  What would those points be, Counsel?         01:22

1          **MR. BEHNKE:**  It's my understanding -- and obviously,

2    this Court has no control over it, but that if he suffers a

3    conviction for contempt in these proceedings, he could face

4    collateral consequences in the military as a result of that

5    conviction, to include possible discharge from the Marine Corps          01:22

6    and/or loss of pay.

7          **THE COURT:**  Mr. Low, have you further advised your

8    client of those collateral consequences?

9          **MR. LOW:**  Yes, sir.  It's my understanding -- I've

10   informed Sergeant Nelson that as a result of being -- if he          01:23

11   were found guilty of the criminal contempt charge, that that

12   would carry, or could carry, a potential additional sentence

13   and punishment by the United States Marine Corps in the form of

14   a military court-martial.

15          I've explained to him what those are, yes, Sir.          01:23

16          **THE COURT:**  Sergeant Nelson, do you understand what

17   your attorney and Government counsel just stated?

18          **THE WITNESS:**  Yes, I do, Sir.

19          **THE COURT:**  Is your mind clear today?

20          **THE WITNESS:**  Yes, it is, Sir.          01:23

21          **THE COURT:**  Are you under the influence of any

22   substance?

23          **THE WITNESS:**  No, I'm not, Sir.

24          **THE COURT:**  The Court understands that you are

25   invoking your Fifth Amendment right not to testify,          01:23

```
 1    notwithstanding this Court's order to do so, and that you

 2    further understand that this Court has found, pursuant to the

 3    clear precedent of the United States Supreme Court, that the

 4    immunity afforded by this Court applies to all courts in this

 5    country, including the military courts of justice.               01:24

 6              Do you understand that?

 7              THE WITNESS:  Yes, I do, Sir.

 8              THE COURT:  And understanding that, it is still your

 9    position that you refuse to testify; is that correct?

10              THE WITNESS:  With all due respect, yes, it is, Sir.   01:24

11              THE COURT:  Can you conceive of any condition that

12    would change your position concerning testifying in the matter

13    now before this Court?

14              MR. LOW:  Your Honor, if I may, I may be in the best

15    position to answer that question, because we did discuss that;   01:24

16    but it's your question, so I'll let you decide.  But I don't

17    know that he's prepared to answer it in the way you may be

18    asking for.

19              May I speak on that?

20              THE COURT:  You may speak on that, Counsel.            01:25

21              MR. LOW:  I've discussed that exact question with

22    him, Your Honor, and what Sergeant Nelson was told was simply

23    that if the Court's ruling and holding about the application of

24    the immunity that you've signed, the immunity order, was

25    unilaterally binding without question, then -- and this is not   01:25
```

1    argumentative, but this is what I told him -- that we would

2    have no need for appellate courts, Sir, because, therefore,

3    what you're saying is that your word, everyone else must

4    follow.  And I've told him about plenty of examples where,

5    unfortunately, other judges see it differently, and since he's          01:25

6    currently facing a military court-martial with a different

7    judge who has not issued an opinion, I told him that that's the

8    judge who would decide whether or not anything he says here

9    will, in fact, be used against him.  And greater minds, or not,

10   have disagreed on what should be applied and what not.                   01:26

11          I just wanted to tell you that that's something else

12   I advised him of.

13          **THE COURT:**  Should I interpret from that, Counsel,

14   that you're saying that if the convening authority actually

15   issued an immunity order, Sergeant Nelson would testify in this          01:26

16   matter before this Court?

17          **MR. LOW:**  Here's what I can answer on that exact

18   point.  That's a narrow question.

19          If the convening authority had actually been the one

20   to write the letter, then it would take the question out of the          01:26

21   hands of a military judge, and, you're right, we wouldn't need

22   an appellate court.  Unfortunately, they had the power to do

23   that, and they elected not to.

24          **THE COURT:**  You still haven't answered the Court's

25   question.  It's a yes or no question.                                    01:26

1   If the convening authority issued the letter

2 affording immunity for any testimony in the matter pending

3 before this Court, would Sergeant Nelson testify?

4   MR. LOW:  My understanding is, if he had transactual

5 immunity, both out in town with you, Sir, as well as on base, 01:26

6 that Sergeant Nelson would not be able to say that he is not

7 going to testify due to his concerns about incrimination.

8   THE COURT:  I'll ask the question a third time,

9 Counsel, although I don't think it's necessary.  I need a yes

10 or no answer to that question.  And I will take it from you as 01:27

11 opposed to your client.

12   It's a simple question.

13   MR. LOW:  Yes, sir.  I'm going to answer it with one

14 word.

15   THE COURT:  Thank you. 01:27

16   MR. LOW:  My answer to that, Sir, from my

17 understanding, is no.

18   THE COURT:  So essentially, it's been a charade,

19 then, this idea of getting an order from the convening

20 authority.  So notwithstanding an order or a letter from the 01:27

21 convening authority indicating immunity, Sergeant Nelson still

22 would not testify in this Court; is that correct?

23   MR. LOW:  I will not agree with the characterization

24 that it's a charade, because I have more to say about that.

25   THE COURT:  Fair enough.

1    **MR. LOW:**  I can understand that -- that's a fair
2    question, and I would have more to say to it.  But to answer
3    your question shortly, no.

4    **THE COURT:**  Sergeant Nelson, do you understand what
5    your attorney just said to The Court?                                01:27

6    **THE WITNESS:**  Yes, I do, Sir.

7    **THE COURT:**  So there's no condition that you would
8    testify in the matter before this Court; is that correct?

9    **THE WITNESS:**  Yes, Sir, it is.

10   **THE COURT:**  You may step down, Sir.                              01:28

11   **THE WITNESS:**  Thank you, Sir.

12   **THE COURT:**  Mr. Behnke, you may call your next
13   witness.

14       Sergeant Nelson will remain in the courtroom, pending
15   the next witness.                                                    01:28

16   **MR. BEHNKE:**  I'm not sure what The Court has planned
17   for the proceedings, but I do have some matters that might be
18   best taken up initially at side-bar that I think are pertinent
19   to the Government's request that the witness be held in
20   contempt, the amount of time the Government is going to ask The      01:29
21   Court to impose for his contempt.

22   **THE COURT:**  Can we take that up after we've gone
23   through the next witness, Counsel?  Is there a reason we need
24   to do that now?

25   **MR. BEHNKE:**  No.  We can do it after the next              01:29

1    witness.

2              THE COURT:  Call your next witness.

3              MR. BEHNKE:  The Government calls Ryan Weemer.

4              THE CLERK:  Do you solemnly state that the testimony

5    you may give in the cause now pending before this Court shall

6    be the truth, the whole truth, and nothing but the truth, so

7    help you God?

8              THE WITNESS:  Yes.

9              THE CLERK:  Please state your full name and spell

10   your last name for the record.

11             THE WITNESS:  Ryan Gene Weemer, W-e-e-m-e-r.

12             THE COURT:  Counsel, you may proceed.

13             MR. BEHNKE:  Thank you, Your Honor.

14                        **EXAMINATION**

15   BY MR. BEHNKE:                                              01:30

16   Q    Sergeant Weemer, before I proceed with asking you any

17   questions, I'm going to take a moment, with the Court's

18   permission, to read into the record a portion of the order

19   issued by this Court dated August 11, 2008.

20             MR. BEHNKE:  May I, Your Honor?                   01:30

21             THE COURT:  You may.

22             MR. BEHNKE:  This order reads, in part, as follows:

23             "Now, therefore, it is ordered, pursuant to 18 USC

24   Section 6002, that Ryan Weemer give testimony or provide other

25   information which he refuses to give or to provide on the basis  01:30

1  of his privilege against self-incrimination as to all matters

2  about which he may be interrogated in the course of these

3  proceedings.

4        "It is further ordered that no testimony or other

5  information compelled under this order or any information                01:30

6  directly or indirectly derived from such testimony or

7  information shall be used against Ryan Weemer in any criminal

8  case, except that he shall not be exempted by this order from

9  prosecution for perjury, giving a false statement, or otherwise

10 failing to comply with this order."  Dated the 11th day of               01:31

11 August, 2008.  Signed the Honorable Stephen G. Larson, United

12 States District Judge.

13 **BY MR. BEHNKE:**

14 Q    Did you hear everything that I just said, Sir?

15 A    Yes, Sir.                                                            01:31

16 Q    Now, on November 9, 2004, in Fallujah, Iraq, in the

17 morning hours, did the defendant, Jose Nazario, order you to

18 shoot and kill an unresisting detainee?

19 A    Respectfully, Sir, I reserve my right to exercise my Fifth

20 Amendment privilege against self-incrimination at this time,             01:31

21 Sir.

22 Q    Is it your intention to decline to answer any questions

23 that I might ask concerning this incident?  Is it your

24 intention to invoke your Fifth Amendment privilege?

25 A    That is correct, Sir.                                               01:32

1   Q    So you would not answer any questions about what occurred

2   on November 9, 2004; is that correct?

3   A    Correct, Sir.  I will invoke my Fifth Amendment privilege.

4   Q    Thank you.

5            **MR. BEHNKE:**  I have no further questions at this                   01:32

6   point.

7            **THE COURT:**  Mr. Johnson?

8            **MR. JOHNSON:**  Your Honor, I'd make the following

9   offer of proof to the Court:  During the past several months,

10  I've been appointed as a CJA panel attorney to represent          01:32

11  Sergeant Ryan Weemer in the pending grand jury investigation as

12  well as the instant matter.  We have had many, many lengthy

13  conversations regarding the meaning of the subpoena; the

14  possible remedy of contempt of court in the event that the

15  subpoena was not complied with; what immunity meant; who could   01:33

16  issue it; how it could be issued; and what it meant.

17           We've spent many long hours discussing his underlying

18  case, the Nazario case, and all of the facts and circumstances

19  that relate to what his prospective testimony could be, what he

20  knows, and most importantly, whether or not he believed and I    01:33

21  believed that all of the appropriate procedural safeguards had

22  been put in place so that he could be compelled to testify.

23           It is my opinion that he received a lawful grand jury

24  subpoena and that The Court was proper in its determination

25  that he was in civil contempt.                                   01:33

1        I have explained to him that the grand jury -- the

2   trial subpoena that he received to compel him to be present for

3   this trial appeared to be in proper format; that the order that

4   this Court gave, pursuant to the Government's request for

5   immunity from the Department of Justice, appeared to be in          01:34

6   proper order and format; and that The Court could lawfully

7   order him to testify; and should he choose to refuse to do so,

8   could hold him either in civil contempt during the duration of

9   the proceedings, or for some period thereafter, or in criminal

10  contempt.                                                            01:34

11       I further advised him if criminal contempt was the

12  option that the Government sought to choose to force today, a

13  summary contempt proceeding could result in a maximum

14  imprisonment of six months, and if the government opted for a

15  felony criminal contempt proceeding, he would be entitled, in       01:34

16  my opinion, to a jury trial and a variety of additional

17  safeguards, but the punishment could be substantially longer.

18       I explained to him there could be collateral

19  consequences with the Marine Corps in terms of an

20  administrative discharge board in the event he was convicted of     01:35

21  a misdemeanor for contempt of court and that he could receive

22  an administrative discharge or hearing, whereupon three

23  officers could determine whether or not his conduct required

24  discharge from the United States Marine Corps.

25       We have discussed, at length, immunity, both               01:35

transactional and testimonial.  I have provided him my opinion

that the Marine Corps fell woefully short, with respect to the

general court-martial convening authority, giving a proper

order.  I explained that during a prior proceeding, we had live

testimony before this Court from a marine officer indicating                01:35

that a grant of immunity is a fairly straightforward and simple

one-page document that is rendered on a regular basis and that

repeated requests have been made through the chain of command

for RCM 704 immunity but that the general court-martial

convening authority apparently had chosen not to do it.  What             01:36

we received instead was a legal analysis from the general's

lawyer, which, in my opinion, was not binding.

     Not notwithstanding that, should The Court ask the

same question of me that it asked of Mr. Low, if he received an

order granting testimonial immunity, along with use and                     01:36

derivative use immunity, would Sergeant Weemer testify, the

answer, unfortunately, reluctantly, is, no, he would not.

     If he was granted transactional immunity so that he

could be absolutely certain that what he said and how he said

could not, in any way, shape, or form, come back to haunt him,              01:36

it is my belief that he would testify pursuant to The Court.

     However, that has not been something that the general

court-martial convening authority has put on the table, nor has

there been any discussion from the general court-martial

convening authority even about derivative use immunity.  And                01:37

1    that is one of the biggest problems here.

2            As we sit here with this Court trying to decide

3    whether or not this marine should be held in civil contempt, or

4    for that matter, possibly criminal contempt, one has to ask the

5    question:  Why on earth would the convening authority in a case          01:37

6    of this magnitude, with the press watching every move -- why

7    does the general not agree to give testimonial immunity?

8            There may be a reason, but we certainly haven't heard

9    it.

10           And in this day and age of procedural safeguards and          01:37

11   checks and balances, one must ask:  Is it conceivable that the

12   Government had not passed along to the military attorneys the

13   request by the Defense?

14           Indeed, the questions by Judge Anderson, and perhaps

15   yourself, 'I don't know why they didn't; perhaps they have a          01:37

16   good reason.'  We haven't heard that good reason.

17       **THE COURT:**  We're getting beyond what you advised

18   your client, Counsel.

19           Now, you certainly know, based on your own

20   understanding of the Fifth Amendment and the law related to it,          01:38

21   that transactional immunity is not required before a defendant

22   or a witness can be ordered to testify.

23       **MR. JOHNSON:**  That is correct, Your Honor.

24       **THE COURT:**  In respect to any testimonial immunity,

25   though, you're representing, as Mr. Low represented to The          01:38

```
 1    Court, that there is no immunity that could be given by this
 2    Court or by the convening authority that would alter your
 3    client's position concerning his testimony in the matter before
 4    this Court; is that correct?
 5         MR. JOHNSON:  To answer that very succinctly, The                01:38
 6    Court says, "Is there any immunity," yes, there is a type of
 7    immunity, but with respect to testimonial and --
 8         THE COURT:  The specific question I asked is with
 9    respect to testimonial immunity.
10         MR. JOHNSON:  I did not hear that word, Your Honor.
11         THE COURT:  I may have misspoke, then.
12         With respect to the testimonial immunity that has
13    been afforded by this Court and that has been indicated on
14    behalf of the convening authority to be afforded by the
15    Marine Corps, if that were to be given by the convening                01:39
16    authority itself, by the general, are you telling The Court
17    that based on your conversations with your client, he still
18    would not testify?
19         MR. JOHNSON:  That is correct, Your Honor.
20         THE COURT:  Is there anything further, Mr. Johnson,              01:39
21    from you?
22         MR. JOHNSON:  No, Your Honor.
23         THE COURT:  Sergeant Weemer, did you hear your
24    attorney?
25         THE WITNESS:  Yes, Sir.                                          01:39
```

1          **THE COURT:**  And you heard everything the Government

2     attorney said as well?

3          **THE WITNESS:**  Yes, Your Honor.

4          **THE COURT:**  And do you understand what they both

5     stated?                                                          01:39

6          **THE WITNESS:**  Yes, Your Honor.

7          **THE COURT:**  And is that accurate, that there is no

8     testimonial immunity --

9          **THE WITNESS:**  That is correct, Your Honor.

10         **THE COURT:**  Just to be clear for the record, there's    01:39

11    no testimonial immunity from this Court or the convening

12    authority that would alter your position?

13         **THE WITNESS:**  Correct.

14         **THE COURT:**  You would still disobey the order of this

15    Court; is that correct?                                          01:39

16         **THE WITNESS:**  Very respectfully, Your Honor, yes.

17         **THE COURT:**  Is your mind clear today?

18         **THE WITNESS:**  Yes, Your Honor.

19         **THE COURT:**  Are you under the influence of any

20    substance?                                                       01:40

21         **THE WITNESS:**  No, Your Honor.

22         **THE COURT:**  Do you understand the consequences that

23    have been explained to you by your attorney?

24         **THE WITNESS:**  Yes, I do, Your Honor.

25         **THE COURT:**  Mindful of those consequences, it is        01:40

```
 1    still your position that you will not testify in the matter now

 2    before this Court?

 3              THE WITNESS:  Yes, Sir.

 4              THE COURT:  Thank you, Sir.

 5         You may step down.                                          01:40

 6         MR. JOHNSON:  Your Honor, may I ask several brief

 7    questions?  I think this may already be on the record; but just

 8    with respect to upcoming proceedings.

 9              THE COURT:  You may.

10                         EXAMINATION

11    BY MR. JOHNSON:

12    Q    Sergeant Weemer, is it your understanding that you have

13    been charged by the Marine Corps with murder and with

14    dereliction of duty?

15    A    Yes.                                                        01:40

16    Q    When are you set for arraignment on that case?

17    A    Arraignment is set for Monday morning.

18    Q    Is it your understanding that the maximum sentence that

19    you could receive would be life imprisonment if you were

20    convicted of those charges?                                     01:40

21    A    That is correct.

22    Q    And is the reason you are not testifying here today

23    because of your concern, a well-founded concern in your own

24    subjective mind, that something you said or didn't say could in

25    some manner come back to haunt you at that court-martial?       01:41
```

1   A     That is correct.

2          **MR. JOHNSON:**  No further questions, Your Honor.

3          **THE COURT:**  Thank you.

4          Anything further from the Government?

5          **MR. BEHNKE:**  Not on this particular issue,                      01:41

6   Your Honor.

7          **THE COURT:**  I understand.

8          Sergeant Weemer, you may step down, but you're

9   directed to stay in the courtroom.

10         **THE WITNESS:**  Thank you, Your Honor.                            01:41

11         **THE COURT:**  As far as where we are at this point, at

12  this juncture, surely The Court finds that both Sergeant Nelson

13  and Sergeant Weemer are in contempt of this Court's orders with

14  respect to their testimony.  I certainly reaffirm the legal

15  findings I made previously, that under the clear Supreme Court   01:41

16  precedent and interpretation of the Fifth Amendment, the

17  immunity that has been afforded is such that it not only binds

18  this Court or any other federal or state court in this country

19  but the military courts as well, and that there is no legal or

20  lawful basis at this point for Sergeant Weemer or               01:42

21  Sergeant Nelson to withhold their testimony in the matter

22  before this Court.

23         Having said that, it is also clear that there are no

24  circumstances available to this Court that would compel their

25  testimony.  The Court had previously found that the period of   01:42

1   imprisonment was of no consequence.  As I've previously

2   indicated this morning on the record in chambers, The Court is

3   still of that view, that a civil contempt finding and placing

4   either of these two individuals, given their circumstances,

5   given their background, would be of no effect.                    01:42

6           That is where The Court is at this point.

7           Government counsel has indicated in chambers that

8   they would be moving this Court for a finding of criminal

9   contempt based on the violation, the refusal to comply with

10  this Court's order, and the obstruction of this trial.           01:43

11          Is that still the Government's intention?

12          **MR. BEHNKE:**  Yes, Your Honor, it is.

13          **THE COURT:**  Very well.

14          I'll hear from the Government on that.

15          You indicated that you wished to speak to this issue     01:43

16  at side-bar; is that correct?

17          **MR. BEHNKE:**  Well, I do have comments that go to the

18  sentencing that the Government is going to be requesting for

19  these individuals.

20          **THE COURT:**  We're not at the sentencing yet, Counsel. 01:43

21  We're at the -- you're requesting The Court to consider a

22  motion for criminal contempt.  We're at the beginning of this.

23  So let's take this one step at a time.

24          **MR. BEHNKE:**  Yes, Your Honor.

25          Then, as far as that goes, the Government does move       01:43

```
 1   to have this Court enter an order finding both witnesses in

 2   criminal contempt, in violation of Title 18, United States Code

 3   Section 4013, for willfully disobeying a lawful order of this

 4   Court.  The Government believes that there has been a

 5   sufficient showing to establish a finding of that particular      01:44

 6   violation.  And under the procedures set out in Federal Rule of

 7   Criminal Procedure 42, since the contemptuous conduct occurred

 8   this morning, in the presence of this Court, this Court does

 9   have the ability to make summary findings of contempt and to

10   imprison the witnesses for that contempt.  Given that it is a     01:44

11   finding by The Court as opposed to a finding by a jury, the

12   maximum period of confinement that could be imposed is six

13   months imprisonment.

14          But that is the procedure that the Government is

15   requesting The Court engage in.                                   01:44

16          THE COURT:  Thank you, Counsel.

17          I'll hear from the Defense, the counsel for

18   Sergeant Weemer and Sergeant Nelson.

19          Mr. Low, you may respond to the Government's request

20   of The Court.                                                     01:45

21          MR. LOW:  With regards to the precedent and the

22   lawful order, sir, we're going to submit on the Government's

23   presentation, as well as your own inquiry.

24          However, what I'd like to say is that it's my

25   understanding that Sergeant Nelson may not actually have a        01:45
```

1    right or an entitlement to a jury trial.  And that may or may

2    not be the rule.  I guess it depends on how you argue it.  And

3    I'd like to submit this only:  And that is that my grandad

4    taught me that all rules have exceptions, and so should the

5    law, because it's supposed to be tailored for people who need          01:45

6    special consideration.  And I'm going to ask you, sir, to

7    consider possibly making an exception in this case.  And the

8    exception is that because Sergeant Nelson, in the unique

9    sacrifices that he has made for this country, for every one of

10   us who live under the blanket of the freedom that he provided         01:46

11   with the blood that flows through his veins -- that he might be

12   entitled to the exception.  And the exception means that he

13   gets a jury trial on this misdemeanor offense, like he would if

14   this was state court.  State court misdemeanors get jury

15   trials.  And so what I'm going to ask you, Judge, is if you           01:46

16   would withhold your ruling on whether or not he's actually in

17   contempt and at least provide us the time to do some briefing

18   and maybe some further argument on whether or not he may be

19   entitled to a jury trial on this, and would you consider it.

20          At this point, I'd like to stop there and submit on           01:46

21   that issue.

22          **THE COURT:**  Thank you, Counsel.

23          **MR. LOW:**  Thank you.

24          **THE COURT:**  Mr. Johnson?

25          **MR. JOHNSON:**  Your Honor, I think we basically have        01:46

1   two issues here.  One is the findings phase, and one is the

2   sentencing phase.  And we would submit on the findings, I

3   believe, based on what The Court has seen and heard, that

4   Sergeant Weemer, for his own unique reasons, is in contempt.

5   And I believe he is in criminal contempt.  There's simply no          01:47

6   justification, other than that which he himself has provided to

7   you, to explain why he would stand in this courtroom, in front

8   of this flag that he has defended with his blood, and tell you

9   that he's refusing the Court's order.

10          He explained to you that the reason he is doing that          01:47

11  is because he is on trial for his very life.  And what I would

12  ask The Court to do is to look at the facts and circumstances,

13  to look at the Purple Heart on this decorated marine's chest,

14  to know what he has gone through, and to recognize what it

15  takes for him to sit up here on this witness stand and tell you      01:47

16  he's going to disobey your order.  Think what that must take

17  for a marine to refuse to obey a lawful order from his command.

18  They don't do it lightly.

19          He did do it in this case because he's protecting the

20  only thing he has left:  His life and his family.  Because he,       01:48

21  deep down inside, honestly believes that if he testifies, he

22  could say or do something that is going to adversely affect him

23  in his upcoming court-martial.

24          **THE COURT:**  Counsel, my understanding is that a

25  marine always has something left besides his life.                    01:48

1          **MR. JOHNSON:**  That is true, Your Honor.

2          **THE COURT:**  And that's his honor and his integrity.

3          **MR. JOHNSON:**  That is true.  Absolutely true.  And

4    his honor and integrity are what brought him into this

5    courtroom and what made him --                                    01:48

6          **THE COURT:**  It's my understanding that a marine is

7    willing to give up his life for his honor and his integrity.

8          **MR. JOHNSON:**  That's true.  And this marine took

9    three bullets in his leg and had his best friend die in his

10   arms.                                                             01:48

11         **THE COURT:**  I understand that.  The Court is once

12   again calling on his honor and his integrity to comply with a

13   lawful order of a federal court, the constitution that he swore

14   to uphold.

15         **MR. JOHNSON:**  And he understands that.  I think you    01:49

16   can tell from his demeanor he's not taking this lightly.  To

17   him, this is not a joke.  It's a nightmare.  Everything is a

18   nightmare.  And where he is right now is -- we are on Friday,

19   early afternoon.  He is going to be arraigned on charges of

20   murder come Monday morning in the Marine Corps, unless, of       01:49

21   course, he's in jail.

22         What I would respectfully suggest, Your Honor, is,

23   given what this marine has given for his country in the past,

24   plus the 20-some-odd days that he has already spent in

25   confinement, that The Court find him in criminal contempt and    01:49

1    sentence him to be time-served that he has already spent in the

2    San Bernardino jail facility and let him get on with defending

3    himself.  He has spent a great portion of his adult life

4    defending this country, and he is now in the position of trying

5    to defend himself.  We would respectfully request that you find      01:49

6    him in criminal contempt and sentence him to the time served

7    that he has already done.

8              Thank you, Your Honor.

9              **THE COURT:**  Thank you, Counsel.

10             Well, The Court has before it a request from the           01:50

11   Government to find the defendant in contempt, in criminal

12   contempt.  And I found him in civil contempt.  I've indicated

13   my findings on that.

14             As far as the criminal contempt is concerned, there

15   are two procedures that are available to The Court.  The first      01:50

16   one, set forth in Federal Rule of Criminal Procedure 42-A, is

17   the procedure used for a disposition after notice; and the

18   second procedure, set forth in Rule 42-B, is summary

19   disposition.

20             The summary disposition procedure is disfavored, both     01:50

21   by the Ninth Circuit and the United States Supreme Court.  It

22   is to be used in those rare instances where there's actually a

23   disruption or obstruction to The Court proceeding.  While we've

24   certainly had an obstruction or a disruption this morning by

25   the fact that two hours have been spent on this matter while a      01:51

1    jury is waiting, the trial can certainly go forward without

2    further ado once this matter is resolved.

3            It is clear that there is no circumstance that these

4    two witnesses will testify, so there is nothing to be gained,

5    in the Court's view, by immediately finding the summary                01:51

6    disposition and sentencing these witnesses.

7            There are defenses and there are arguments.  Mr. Low

8    has made them, and Mr. Johnson now, very passionately, has made

9    arguments of mitigation and excusal.  And I think it would be

10   unfair to these witnesses not to give them their due process          01:51

11   and to have those positions fully considered.

12           At the same time, I would decline Mr. Johnson's

13   suggestion of a rush to judgment in the other direction, and

14   not allow the Government the opportunity to present its

15   arguments and its positions in aggravation as to why some             01:52

16   punishment might be appropriate for refusal to abide by the

17   Court's order.

18           Given these circumstances, I think the more prudent

19   course is not a summary disposition of this matter here on the

20   spot, but to provide notice and to have a formal procedure            01:52

21   where both the factors in mitigation by Mr. Johnson and Mr. Low

22   have expressed and the factors in aggravation that the

23   Government has expressed are fully considered by this Court

24   before any decision is made.

25           The Court is also mindful that Sergeant Weemer has a          01:52

1    court date on Monday.  He is being prosecuted by the United

2    States Marine Corps for the murder related to the same charges

3    that are pending before this Court.  Sergeant Nelson also has

4    upcoming proceedings, as Mr. Low has expressed to The Court in

5    chambers.  And The Court, as I previously indicated when I                01:53

6    ruled on the civil contempt, does not want to interfere with

7    either witness's ability to fully defend themselves before the

8    United States Marine Corps.

9         So given all of those circumstances, I believe the

10   better procedure to follow is the procedure set forth in 42-A.           01:53

11   I respectfully decline to follow the suggestion of the

12   Government and the Defense to summarily dispose of this matter

13   at this point.  So I'm going to set notice of a time and place

14   of a trial in this matter.  I will allow the defendant a

15   reasonable time to prepare a defense.  I think I've already              01:53

16   stated the essential facts constituting the charge of criminal

17   contempt.  It is simply a refusal to follow a lawful order of

18   this Court under Title 18, United States Code Section 401.

19        I will hear from the defense in terms of what they

20   believe would be a reasonable time to prepare a defense to the           01:53

21   allegation that these defendants are criminally refusing to

22   follow this Court's order.

23        Mr. Low?

24        **MR. LOW:**  Thank you, Sir.

25        May I suggest 30 days, to come back and have a trial               01:54

1    setting date within 30 days.  It would allow me to tell you

2    whether I can get all of my witnesses together, which will be

3    sentencing and mitigation witnesses, Sir.

4           **THE COURT:**  Mr. Johnson?

5           **MR. JOHNSON:**  That seems amenable, Your Honor.          01:54

6           **THE COURT:**  Mr. Behnke?

7           **MR. BEHNKE:**  If The Court would indulge me for a

8    moment.

9           **THE COURT:**  I will.

10          **MR. BEHNKE:**  The Government strongly disagrees with     01:54

11   the course this Court is taking.

12          While the Government understands that the summary

13   contempt proceeding is typically used when court proceedings

14   are actually disrupted, the Government thinks that is exactly

15   what is happening here.                                          01:54

16          As this Court is aware, these two witnesses were

17   eyewitnesses to what happened in that house on November 9,

18   2004.  Both of them, in recorded, under-oath interviews with

19   NCIS -- in Sergeant Nelson's case, multiple interviews --

20   explained that this was an execution.  In Sergeant Nelson's      01:55

21   case, he explained that acting under Sergeant Nazario's orders,

22   he made his detainee get in front of him, face away from him,

23   and he shot him in the back of the head with his M-16 rifle.

24   Sergeant Weemer admitted in his interview that he took his

25   detainee, pulled out his .9 millimeter pistol, and shot him in   01:55

1    the chest multiple times.  There was no self-defense.  There

2    was no hostile act or hostile intent.  This was an execution.

3         There may have been other justifications that

4    Sergeant Weemer and Sergeant Nelson had in mind for it,

5    primarily the order they got from their superior, but at the          01:55

6    end of the day, this was an execution, and the Government is

7    extremely concerned at the fraud that's potentially being

8    perpetrated on this jury by the absence of these witnesses.

9         As The Court sat here and listened yesterday,

10   hypothetical after hypothetical is being put to this jury about    01:56

11   what if he was going for an IED, what if he was jumping for a

12   weapon, what if a million other things were happening.  The

13   Government believes that this trial, which is a very important

14   proceeding, in the Government's mind, is being disrupted by

15   this contemptuous conduct.  Certainly, it's not going to be         01:56

16   cured if we continue this for a trial for 30 days.

17        **THE COURT:**  You just hit upon it, Counsel.  The Court

18   has found that there's no curing to be done.

19        Are you suggesting that if I order Sergeant Weemer

20   and Sergeant Nelson into prison today, that somehow we can cure     01:56

21   this?  Understand, we're moving beyond civil contempt.  If I

22   sentence him, just hypothetically, to six months in prison

23   today, and they come in tomorrow and say, Oh, well, we now want

24   to testify -- they're sitting in prison for six months.  We're

25   past the civil contempt compulsion stage.                           01:57

1          We are now -- you are now simply, under 42, calling

2     upon this Court to punish these two individuals for failing to

3     testify and comply with the Court's order.

4          Everything that you just stated right now is a very

5     compelling and passionate reason to punish these two witnesses          01:57

6     severely.  Everything that Mr. Johnson and Mr. Lowe indicated

7     are mitigating factors that The Court should take into account

8     in meting out that punishment.  But all of this goes to the

9     issue of punishment, which The Court wants to consider on the

10    Court's time, with deliberation and introspection.  There's          01:57

11    nothing that the Court's punishment of these individuals today

12    does to change what -- and you rightly and justly expressed the

13    outrage that you are expressing right now, because if the --

14    and I have to go back to "if," because now I'm past the civil

15    contempt and I'm not going to prejudge a finding of criminal          01:58

16    contempt -- but if The Court finds a criminal contempt, and

17    everything that you say is true, that, quite frankly, is a

18    consequence that The Court will take into account if it is

19    properly before it at the sentencing on criminal contempt.

20         But to suggest that somehow I can cure now, by a          01:58

21    criminal contempt punishment, a refusal to comply with a court

22    order in time for this jury to hear that, I think,

23    misapprehends where we're at on this.

24         Do you understand what The Court is saying?

25         **MR. BEHNKE:**  I do understand what The Court is          01:58

saying.  And, you know, part of the Government's concern -- and

this is where -- I have to distinguish between Sergeant Weemer

and Sergeant Nelson; they're in different places, different

circumstances.  But the Government has grave concerns about

what is going on and why it is going on.                          01:59

       The Court has sat hear today and listened to factors

in mitigation, facing murder charges, facing life in prison.

The Government has been told that in Sergeant Nelson's case, he

was made an offer, an offer in exchange for cooperation that

would result in him being allowed to plead guilty merely to     01:59

dereliction of duties as long as he did everything the plea

agreement called for for a period of 12 months; no confinement,

and he would be allowed to remain in the military.

       **THE COURT:**  This is another factor, Counsel.  This is

all being unveiled to The Court as we speak here.  This kind of  01:59

substantiates why I want to have, separate and apart from this

trial, an opportunity for both sides to completely brief The

Court on what is going on here.  I have serious concerns as to

what is going on here.

       But if you can address this:  Why the summary             02:00

contempt today?  What you're trying to do, by forcing me to do

a summary contempt today, is, first of all, limit my ability to

impose a sentence beyond six months, not take into account the

aggravating circumstances fully that you're describing here,

not to fully address and be mindful and aware of what takes      02:00

1   place down at Camp Pendleton.  You want me to make a spot

2   decision today as to what is the appropriate punishment for

3   this violation of the Court's order when it's not going to

4   change anything in this trial.

5          The cases -- and I grabbed them quickly because you          02:00

6   raised this this morning as I was coming out here -- certainly

7   talk about the appropriateness of a summary criminal contempt.

8   If we had somebody disrupting this court proceeding, if someone

9   was standing up and refusing a court order to be quiet, I would

10  order the marshals to take that person out, summarily hold them   02:00

11  in contempt, and they would go off to prison as punishment.

12  That's not what we're talking about here.

13         We're talking about a violation of an order to

14  testify.  And I understand that it impacts your ability to

15  bring your case.  The Court's ruling yesterday on the Motion *in*  02:01

16  *Limine* impacts your ability to bring your case.  Obviously,

17  they're two entirely separate matters.  One is based on law;

18  one is based on an unlawful act.  But in either event, there's

19  nothing that we can do.  Unless I'm missing something.

20         And this is what I want to hear from you.  If I'm          02:01

21  missing something, please let me know.  But there's nothing

22  that summarily deciding this now does to change the impact this

23  is having on the trial.

24         And you're preserving all of your rights and all of

25  the Government's abilities to bring to the Court's attention      02:01

1   just how aggravating this is; just how much, to use your words,

2   this might be a fraud on The Court.  That's why I asked the

3   question I did.  I share some of these same concerns.  I asked

4   Mr. Low, has this all been a charade?  Even if the convening

5   authority had come back with the testimonial immunity, are you        02:02

6   saying that your client would still not testify?  He said he

7   still would not testify.

8          He took exception to the Court's use of the word

9   "charade," and that was well taken by The Court, but I share

10  your concern, Counsel, as to what's going on here.                    02:02

11         I'm not seeing how your suggestion in any way

12  addresses the concern at this point.

13     **MR. BEHNKE:**  I guess at the heart of at least a

14  portion of the Government's concern is watching and listening

15  to Sergeant Nelson here today.  Part of what the Government is        02:02

16  concerned about is what Sergeant Nelson really understands.

17  Does he really understand what he passed up and what he's

18  getting into?

19     **THE COURT:**  I have to have confidence in Mr. Low as

20  an attorney to Mr. Nelson.  That's Mr. Low's responsibility as        02:02

21  both a member of the bar of this Court and as an officer of

22  this Court to make sure that he's fully advised his clients.

23  And I have no reason to believe that he has not.

24         Again, what are you asking?  Are you requesting me to

25  put Sergeant Nelson in prison because you think Mr. Low has not       02:03

1   fully communicated to him -- I understand your frustration

2   Mr. Behnke.  I really do.  I understand -- this is a

3   frustration, and, to a certain extent, is shared by The Court.

4   I mean, whenever someone appears allegedly to willfully violate

5   a court order, there's probably nothing more frustrating.    02:03

6          **MR. BEHNKE:**  Again, in light of the rejected pretrial

7   offer, the course of conduct that Sergeant Nelson engaged in up

8   until late 2007, he did the right thing repeatedly.  He

9   answered questions truthfully when he was called upon.  And now

10   we're at the position that we are today?  And then on top of    02:04

11   that, on Tuesday -- as I brought up yesterday, on Tuesday, one

12   of his lawyers was up at side-bar with us?

13         I'm just reluctant to say, Let's just put this off

14   for 30 days and wrap up this trial right now and move on.  I

15   just -- I don't really have an answer to the Court's question    02:04

16   about what we can do.

17          **THE COURT:**  You haven't.  Right.

18          **MR. BEHNKE:**  I just don't think that what is

19   happening now is fair and right to the Government's case, to

20   the United States.    02:04

21          **THE COURT:**  How would doing a summary disposition be

22   fairer or right to the United States right now?  What would

23   that do?  Other than extract a sense of -- certainly, the

24   Government can take the long view of things.  You are an

25   assistant United States attorney.  You understand that    02:04

1    sometimes you need to stand back and take a longer view of

2    things and understand that in the end, justice will be served,

3    Counsel.

4         **MR. BEHNKE:**  I am confident in that, Your Honor.  I

5    agree with Your Honor on that point.  The only thing that the          02:05

6    Government could hope -- and that is what it is at this point,

7    is hope -- is that if these witnesses know that effective today

8    they could be facing six months in prison before The Court

9    actually imposed that, maybe they would have a change of heart.

10   If The Court tells them, Come back and see me in 30 days,          02:05

11   there's no reason whatsoever to think that anything is going to

12   change in the course of the next couple of days while we still

13   have this jury.

14        **THE COURT:**  Well, now we're back to you are really

15   seeking a civil contempt solution.  And I guess my response to          02:05

16   that -- and I do understand what you're saying, and I don't

17   mean to be dismissive of it, but what I'm telling these

18   witnesses -- and they're both in this courtroom right now, and

19   they're hearing this exchange just like you and I are -- I'm

20   not saying that they're going to be held to six months.  You          02:06

21   know, I know, and their attorneys know that by using

22   Procedure 42-A, there is no maximum limit to which this Court

23   can sentence these witnesses.

24        And The Court will then, at the time of the

25   disposition of this, and after hearing all of the mitigating          02:06

1   and the aggravating circumstances, The Court will have the

2   benefit of knowing not only the outcome of this trial, Counsel,

3   but the outcome of the proceedings in Camp Pendleton.

4         MR. BEHNKE:   I just have one more request for you,

5   then.   It's related to this contempt issue.                      02:06

6         THE COURT:   I would hope that would give the

7   witnesses some pause.

8         MR. BEHNKE:   And I agree with Your Honor.   And if

9   this continues to unfold the way that it looks like it's

10  unfolding, I agree completely with The Court that substantial    02:06

11  punishment may end up being appropriate for these witnesses,

12  given the grave harm they're causing and the extreme nature of

13  their contemptuous conduct.

14        THE COURT:   And let's be clear.   I don't know, but

15  all kinds of things are being speculated here.   You're          02:06

16  speculating fraud on The Court, fraud on the jury.   On the

17  other hand, Mr. Johnson and Mr. Low are very persuasively

18  arguing that the victims in this whole thing are

19  Sergeant Weemer and Sergeant Nelson.   I have two witnesses and

20  a defendant in this courtroom who are presumed innocent until    02:07

21  proven guilty.   Nothing has been proven.   Nothing may be

22  proven.   There's just a lot of factors in flux, and it's for

23  that reason that I believe the more prudent course is for this

24  Court, recognizing that there is nothing to be done at this

25  point to compel these witnesses to testify, stays its hand and   02:07

1   waits until it can hear all of the facts and circumstances.

2         MR. BEHNKE:  Would The Court, then -- last point and

3   I'll be finished -- would The Court, then, in light of the

4   circumstances, before we continue down that path, with

5   Sergeant Nelson, in particular -- would The Court entertain,      02:08

6   outside the presence of the Government, perhaps even at

7   side-bar or in chambers, an inquiry of Sergeant Nelson on this

8   issue, particularly the potential conflict issue, just to make

9   sure that the Government's fears are not correct, before we

10  proceed down the path of --                                       02:08

11        THE COURT:  You're talking about the conflict with

12  the attorney yesterday.  I know Mr. Low looked surprised when

13  you just made that statement a few minutes ago.

14        MR. BEHNKE:  I haven't mentioned to Mr. Low that

15  happened the other day.                                           02:08

16        THE COURT:  In any event, Mr. Low may want to confer

17  with other counsel, but this Court -- I really -- I have no

18  reason before me not to have complete confidence in Mr. Low and

19  all of the defense counsel and witness counsel before me.  I'm

20  disinclined to superimpose the Court's advice or counsel on      02:08

21  appointed counsel and retained counsel in this matter -- or pro

22  bono counsel in this matter.

23        MR. BEHNKE:  May we approach for one point,

24  Your Honor?

25        THE COURT:  You may.                                        02:09

1          (Whereupon, proceedings were held at

2          side-bar and are not produced herein.)

3          (Whereupon Mr. Low and The Court

4          had an off-the-record discussion.)

5          **THE COURT:**  Come to order.  Back on the record.     02:21

6          The record will simply reflect that Mr. Low informed

7     The Court of matters, to which all counsel consented, at

8     side-bar off the record.

9          Very well.

10          Proceeding forward, the next point -- notwithstanding     02:21

11    your objections to the procedure The Court is taking,

12    Mr. Behnke, those are stated on the record -- is there any

13    other objection to a trial setting 30 days hence?

14          **MR. BEHNKE:**  No, Your Honor.

15          **THE COURT:**  Very well.     02:22

16          Then I'll set this matter for hearing on the 29th of

17    September, 2008, at 1:30 in the afternoon, for a trial setting.

18    And the witnesses are ordered back at that time with their

19    counsel.

20          The second point of this process is not only The     02:22

21    Court providing notice, but The Court must appoint a

22    prosecutor.  The Court must request that the contempt be

23    prosecuted by an attorney for the Government, unless the

24    interest of justice requires the appointment of another

25    attorney.  If the Government declines the request, The Court     02:22

 1    must appoint another attorney to prosecute the contempt.

 2            Does the U.S. attorney's office accept or decline?

 3        **MR. BEHNKE:**  The U.S. attorney's office would accept,

 4    Your Honor.

 5        **THE COURT:**  Very well.                                    02:23

 6            And then, finally, of course, the trial and

 7    disposition procedures are set forth.  There's also a

 8    requirement for The Court to consider whether the putative

 9    defendants are to be released or detained pending the trial,

10    and The Court finds, in the interest of justice, that they will    02:23

11    be released on their own recognizance pending further

12    proceedings in this matter.

13            Is there anything further on this matter from the

14    Government?

15        **MR. BEHNKE:**  Other than what we discussed at          02:23

16    side-bar?

17        **THE COURT:**  We'll take that up.  That will be

18    conducted -- right, I'm not going to place that on the record,

19    Counsel.  That's why we did it at side-bar.

20            Is there anything besides that from the Government?    02:24

21        **MR. BEHNKE:**  No, Your Honor.

22        **THE COURT:**  All right.

23        **MR. JOHNSON:**  No, Your Honor.

24        **MR. LOW:**  No, sir.

25        **THE COURT:**  Very well.                                    02:24

1          Let me consult with my courtroom deputy about the

2    jury.

3          (Brief pause.)

4          **THE COURT:**  Counsel, we're going to resume with the

5    trial at 1:00.  I am going to ask counsel for the witnesses and      02:25

6    Mr. Behnke to remain here in the courtroom so that we can

7    address that other matter.

8          Actually, I won't need Mr. Johnson.  Just Mr. Low and

9    Mr. Behnke.  And otherwise, I'll see you in 30 days.  I'll see

10   you on the 29th.  And we'll resume with the trial at 1:00.          02:25

11         Mr. Holmes will explain to the jury that there were

12   matters that The Court needed to take up and that the jury is

13   free until 1:00.  Nobody, of course, is to have any interaction

14   with the jury whatsoever.  And we'll resume with the trial at

15   1:00.                                                               02:26

16         Court is in recess.

17

18                         CERTIFICATE

19

20   I hereby certify that pursuant to section 753, title 28, united
     states code, the foregoing is a true and correct transcript of
21   the stenographically recorded proceedings held in the above-
     entitled matter and that the transcript page format is in
22   conformance with the regulations of the judicial conference of
     the United States.

23

24   _____          _____
     THERESA A. LANZA, CSR, RPR                    Date
25   Federal Official Court Reporter